GOVERNMENT OF THE VIRGIN ISLANDS

v.

REINHOLD JOHN, Appellant

No. 18,156

GOVERNMENT OF THE VIRGIN ISLANDS

v.

MARK CHRISTIAN, Appellant

No. 18,157

GOVERNMENT OF THE VIRGIN ISLANDS

v.

EVANS DANIEL, Appellant

No. 18,158

United States Court of Appeals

Third Circuit

Argued January 25, 1971

Decided July 20, 1971

*See, also, 447 F.2d 69*

---

EDWARD J. OCEAN, ESQ., CHRISTIANSTED, St. Croix, V.I., *for appellant in each case*

JOEL D. SACKS, ESQ., Assistant United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before KALODNER, FREEDMAN* and ADAMS, *Circuit Judges*

### OPINION OF THE COURT

KALODNER, *Circuit Judge*

The instant appeals are from judgments of conviction of the District Court of the Virgin Islands pursuant to a jury's verdicts finding the defendants guilty of first degree rape in violation of 14 V.I.C. § 1701(2).[1]

Defendants contend (1) the evidence was insufficient to sustain the jury's guilty verdicts; (2) prejudicial errors marked the conduct of the trial; (3) prejudicial errors were committed by the trial judge in his instructions to the jury and his failure to properly instruct the jury; (4) defendants were denied effective assistance of counsel; and (5) defendants were denied an impartial jury.

The thrust of the Government's evidence was that the defendants forcibly had sexual intercourse with one Violet Carr, then 17 years old, on November 8, 1967, and that they had each aided and abetted in the commission of the girl's alleged ravishments.

---

* Judge Freedman participated in the hearing and consideration of this appeal but died before decision.

[1] Section 1701(2) provides: "Whoever perpetrates an act of sexual intercourse with a female not his wife—
 (2) when her resistance is forcibly overcome; is guilty of rape in the first degree and shall be imprisoned not more than 20 years."

The three defendants took the witness stand and made point-blank denial of the Government's testimony. Defendants Mark Christian and Evans Daniel testified they had not had sexual relations with Violet Carr on November 8, 1967; defendant Reinhold John testified that he did have sexual intercourse with the girl on that day but that it was consensual, and that he had previously and subsequently had such intercourse with her. The defense adduced testimony corroborating John's prior and subsequent sexual relationship with Violet Carr, and of her prior frequent sexual relationships with other men. Two defense witnesses, girl friends of Violet, testified that she had a bad reputation as to chastity and credibility. Additionally, the defense placed in evidence Violet's pre-trial statement, under oath, that the defendants had not raped her.

██ It would serve no useful purpose to recite in detail the Government's evidence adduced at the three-day trial of this case in April, 1969, insofar as defendants' challenge to its sufficiency to sustain the jury's guilty verdicts is concerned. Viewing the evidence in the light most favorable to the government, as we must,[2] we cannot say that the evidence adduced at the trial did not sustain the jury's verdicts, although we cannot refrain from the observation that were we the triers of fact, we might well have arrived at a contrary result.[3] On this score we point out that the rape-complainant's equivocal testimony and that of a corroborating witness, abstracted in the margin,[4] sharply conflicted.

---

[2] Government of Virgin Islands v. Brooks, 378 F.2d 338, 339 (3 Cir. 1967).

[3] Judge Joseph of the Virgin Islands Municipal Court, Division of St. Croix, Frederiksted, found no probable cause and released the defendants following the February 8, 1968 Preliminary Hearing which preceded the trial.

[4] Violet Carr, on direct examination, testified in sum as follows: At about 11:30 A.M. November 8, 1967, she was walking with her cousin, Agnes Mae Trent, on King Street, Frederiksted, St. Croix, when Christian called to her; she walked across the street to where he was standing outside the home of Daniel; he asked her into the house; she refused; he took her hand and "pulled me inside the house"; a distance of some six to eight feet; he "threw me down on the bed . . . pulled off my panties . . . Daniel

Defendants' contentions that prejudicial errors marked the conduct of their trial and the court's charge to the jury, require, however, that we advert, seriatim, to certain aspects of defense testimony critical to these contentions.

First:

Defendant John testified, on direct examination, that, upon Violet's invitation, he had sexual intercourse with her on November 8, 1967, as he had done both prior and subsequent to that day and that neither Daniel or Christian had sexual intercourse with Violet on November 8, 1967. The prosecutor, on cross-examination, confronted John with a signed statement which he had given to police on the afternoon of November 8, 1967 in which he said that he heard Christian call Violet into Daniel's home; shortly thereafter he saw the girl sitting on the bed "and Mark [Christian] was holding both her hands upward; then Evans Daniel came in wearing his brief and closed the windows and the door . . . Minnie [Violet] started to scream out and she said 'Loose me' . . . I saw Daniel lay down on Minnie in a position to have sexual intercourse with her . . . Mark was on the bed, holding one hand . . . I stood . . . until Evans got up, then I . . . got on her and had sexual intercourse with her . . . ."

jumped on top of me and he raped me"; Chr'stian at the time held her hands and John her feet; John then raped her while Daniel and Christian held her hands and foot; Daniel again raped her—no one held her that time—; one "Goof" MacIntosh then had intercourse with her—no one then held her; she was "bawling out" and cried "loose me, loose me" time and again when the defendants ravished her and tried to "push them off." Violet in her direct examination testified on three separate occasions that Christian had not had intercourse with her that day but later, when the prosecutor pleaded surprise and cross-examined her, she said Christian had raped her.

A prosecution witness, Leopold Dompierre, testified that he saw Christian pull Violet into Daniel's home; the three defendants and MacIntosh then had relations with her; first Christian, then John, then Daniel, then MacIntosh; she was saying "loose me, loose me, loose me" while Christian and John had relations with her and tried to push them off; she said and did nothing while Daniel had relations with her and nobody held her down at that time; Christian, John and MacIntosh held her down while she was being assaulted by them.

John denied, during his cross-examination, that he had made the inculpatory charges against his co-defendants attributed to him in his statement to the police.

When the prosecutor confronted John with his statement, and had him read it to the jury, over defense objection, he did not say to the court or the jury that he was doing so for the sole purpose of impeaching John's oral testimony, on direct examination, exculpating all the defendants from any wrongdoing.

The trial judge, at that time, did not caution the jury that John's statement could only serve to impeach his credibility and that it was not to be considered as evidence of his guilt or the guilt of his co-defendants. Nor did he give such cautionary instruction to the jury when John's statement was offered and admitted into evidence just before he commenced his charge to the jury. And, finally, he gave no such cautionary instruction in his charge.

■■ The recited failures to give cautionary instructions with respect to John's statement constituted error which standing alone would require reversal of the judgments of conviction.[5] The requirement for cautionary instructions in situations such as existed here is of such dimension that even where given a conviction will be reversed when they are ". . . nullified by the manner in which the prosecutor used the confession on cross examination . . . ." West v. Henderson, 409 F.2d 95, 97 (6th Cir. 1969).

It may be noted, parenthetically, that the Government contends on this appeal, that ". . . the statement was used . . . to impeach the credibility of appellant Reinhold John as a witness, and not to implicate him or any of the Appellants in the crime." Implicit in that contention is the Government's recognition of the fact that under well-settled rules John's statement could only be used to impeach his trial testimony and not as substantive evidence of his guilt

---

[5] People v. Lamson, 22 Mich. App. 365, 177 N.W.2d 204, 207–08 (1970); People v. Brown, 15 Mich. App. 600, 167 N.W.2d 107, 109 (1969).

or the guilt of Daniel and Christian, and that cautionary instructions should have been given to the jury with respect to the limited scope of the statement's consideration. To this we add that the Government's contention comes with ill grace in the light of its failure to make known to the jury at any time during the trial, that its use of John's statement was intended only to impeach his credibility, and that it could not be considered as evidence of the guilt of John and his co-defendants.

What has been said brings us to defendants' contention that there was error in the charge to the jury in failing to instruct it that defense evidence as to the rape-claimant's bad reputation for chastity and untruthfulness had substantial probative value on the presented issue of consent, and in denying defendants' requested Instruction (No. 11) to that effect.

The trial judge instructed the jury with reference to the adduced testimony of Violet's bad reputation for chastity as follows:

"You have heard testimony of the kind which I don't like to relate as to 'chastity' and reputation of this actually young girl. *This also has a bearing on it.* . . . Now, members of the jury, the fact that she may have been promiscuous with some of these people, or all of them at different times, does not give them a vested interest in their demanding that she perform it at their pleasure. They had no right to assume that they could do with her because of past relations what they pleased, and if on this day they did have intercourse with her against her will, despite previous relations, they *ought* to be found guilty. I think it is as simple as that, if she consented and didn't resist, acquit them; if she resisted, find them guilty." (emphasis supplied)

It is settled that where the issue of consent of a rape-complainant is presented and evidence is adduced of her bad reputation for chastity, the trial judge is required to instruct the jury that such evidence is "of substantial

probative value in judging the likelihood of her consent."[6]

The naked instruction here anent the chastity evidence, viz., "This also has a bearing on it," manifestly failed to instruct the jury as to the "substantial probative value" dimension of that evidence with respect to the presented issue of consent. The stated failure was prejudicial error.

We must direct attention to still another aspect of the instruction as to the chastity evidence, viz., its fatal error to instruct the jury that evidence as to a rape-complainant's bad reputation for chastity has a "direct bearing on her credibility" where the issue of her consent is presented.

In Commonwealth v. Eberhardt, 164 Pa. Super. 591, 603–604, 67 A.2d 613, 619 (1949), allocatur refused 165 Pa. Super. xxvi, the Court said:

"Under the modern view the unchaste character of the woman in a rape case has a direct connection with her general credibility or veracity on all the elements of rape. Wigmore on Evidence, 3d Ed., vol. 111, § 924a; 44 Am. Jur., p. 963, § 97. The previous want of chastity may be shown by proof of reputation. 44 Am. Jur., p. 960 § 92. In the present case the complainant had testified to intercourse by force and without her consent, and to the extent that evidence of her bad reputation for chastity tended to show consent on her part it necessarily had a direct bearing on her credibility. . . . *Suffice to say that the credibility of the evidence of the female in a trial involving a rape charge is vital and of great importance."[7]* (emphasis supplied)

The stern duty of a trial judge "to bring into view the relations of the particular evidence adduced to the par-

---

[6] In Hicks v. Hiatt, 64 F.Supp. 238 (M.D. Pa. 1946), Circuit Judge Biggs, specially assigned, speaking for the Court, said (p. 243):
". . . the reputation of a rape-complainant as to chastity in the community in which she lives *is of substantial probative value in judging the likelihood of her consent. . . .*" (emphasis supplied)
To the same effect see People v. Fryman, 4 Ill.2d 224, 122 N.E.2d 573 (1954); Commonwealth v. Eberhardt, 164 Pa. Super. 591, 603–604, 67 A.2d 613, 619 (1949), allocatur refused, 165 Pa. Super. xxvi (1949–50).
[7] In Giles v. Maryland, 386 U.S. 66, 76 (1967), the Court, after noting Maryland's subscription to the rule that ". . . prior inconsistent statements and

ticular issues involved" was succinctly spelled out in the leading case of Bird v. United States, 180 U.S. 356 (1901).

There, in holding that "It is well settled that the defendant has a right to a full statement of the law from the court," and that a trial court's failure to give full effect to this right "is sufficient reason for reversal," the Court said at page 361:

> "The chief object contemplated in the charge of the judge is *to explain the law of the case, to point out the essentials to be proved on the one side and the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved.*" (emphasis supplied).

In Tatum v. United States, 190 F.2d 612 (D.C. Cir. 1951) the Court said at page 615:

> "Failure on the part of a trial court in a criminal case to 'instruct on all essential questions of law involved in the case, whether requested or not' would clearly 'affect substantial rights' within the meaning of Rule 52(b) [Fed. R. Crim. P.]" (footnote omitted).

As earlier stated, the defendants submitted a Request for Instruction (No. 11) as to "Reputation of Complaining Witness;" the trial judge denied it; and exception was noted.

In United States v. Blane, 375 F.2d 249 (6th Cir. 1967), the Court, citing, inter alia, Bird v. United States, supra, said (p. 252):

---

evidence of general reputation for unchastity are admissible to impeach a witness' credibility" citing Giles v. State, 229 Md. 370, 183 A.2d 359 (1962), said:

"And to the extent credibility could have been effectively attacked in this case, *resolution of consent necessarily would have been affected since it turned wholly on credibility.*" (emphasis supplied.)

In the instant case there was ample evidence of "inconsistent statements by the rape-complainant, viz., (1) in her direct testimony she three times said that Christian had *not* had sexual intercourse with her on November 8, 1967, and then, when the prosecutor pleaded surprise and cross-examined her, she said Christian had raped her; and (2) in her signed and sworn statement prior to the trial, given to defendants' counsel, she stated that she had not been raped by any of the defendants.

"In a criminal case, it is reversible error for a trial judge to refuse to present adequately a defendant's theory of defense, especially where a proper request therefor is proffered."

We come now to the defendants' contention that they were deprived of the effective assistance of counsel.

The contention is epitomized in this statement:

"Here, all three defendants were represented by one counsel. Where co-defendant John made a statement implicating the other two defendants, the representation of all three defendants by one counsel is error, in that while the co-defendant making the statement took the stand, joint representation did not give rise to effective cross-examination."

The following principles were settled in the leading case of Glasser v. United States, 315 U.S. 60 (1942):

A defendant is constitutionally entitled to the "untrammeled and unimpaired" assistance of counsel for his defense;[8] the right to such assistance is breached where a defendant's counsel simultaneously represents a co-defendant or co-defendants with "conflicting interests,"[9] or "[i]rrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness;"[10] the right may be "affirmatively waived"[11] but the waiver must be knowingly and intentionally made,[12] and a trial judge is charged with the "serious and weighty responsibility" "of determining whether there is an intelligent and competent waiver by the accused;"[13] in doing so the trial judge is to "indulge every reasonable presumption against the waiver;"[14] and if the trial judge determines that a "proper waiver" has

---

[8] 315 U.S. at 70.
[9] Id., at 76.
[10] Id., at 75.
[11] Id., at 70–71.
[12] Id., at 71.
[13] Id., at 71.
[14] Id., at 70.

411

been made, "that determination should be made upon the record."[15]

■ Applying the principles stated to the instant case, we are of the opinion that the defendants were deprived of their constitutional right to the "untrammeled and unimpaired assistance of counsel;" and that there was "no affirmative waiver" of that right, and the defendants should be indulged with "every reasonable presumption against" waiver. On the score of the foregoing, we must point out that the Government has not chosen to challenge the defendants' contention that they were deprived of their right of "untrammeled and unimpaired assistance of counsel," nor has the Government made any contention that the defendants waived the stated right.

The record affirmatively establishes that neither defendants' counsel, the prosecutor nor the trial judge at any time during the trial gave any consideration to the rights of the defendants to "untrammeled and effective representation of counsel," although existence of the conflicting interests of the defendants became apparent when John's pre-trial statement implicating his co-defendants was introduced into the evidence by Government.

What has been said makes unnecessary discussion of the other points urged by the defendants.

The judgments of conviction will be reversed and the cause remanded with directions to grant the defendants a new trial in accordance with this Opinion. In consonance with what has here been said, the District Court is further directed to grant severances should the Government proceed with the defendants' prosecution, unless defendants either employ separate counsel, or the Court appoints separate counsel to represent them if they, or any of them, prove to be indigent.

---

[15] Id., at 71.