**GOVERNMENT OF THE VIRGIN ISLANDS**

v.

**FELIX CARRION HERNANDEZ and IRIS LOPEZ HERNANDEZ**
**Felix Carrion Hernandez, Appellant**

D.C. Crim. No. 117-1971

**GOVERNMENT OF THE VIRGIN ISLANDS**

v.

**FELIX CARRION HERNANDEZ and IRIS LOPEZ HERNANDEZ**
**Iris Lopez Hernandez, Appellant**

D.C. Crim. No. 117-1971

United States Court of Appeals

Third Circuit

Argued February 1, 1973

Filed April 3, 1973

604

STANLEY M. POPLOW, ESQ., Philadelphia, Penna., *counsel for appellant*

FRED M. ACUFF, ESQ., Washington, D.C., *counsel for appellee*

Before MARIS, ROSENN, and HUNTER, *Circuit Judges*

OPINION OF THE COURT

ROSENN, *Circuit Judge*

Husband and wife, Felix and Iris Hernandez, were tried to a jury in a joint trial in the District Court for the District of the Virgin Islands and convicted for possession of heroin with intent to manufacture or distribute it, in violation of 19 V.I.C. § 604(a)(1). They appeal from their judgments of conviction, in which Felix Hernandez was sentenced to fifteen years incarceration and his wife to ten to fifteen years.

The entire case against appellants consisted of testimony about, and display to the jury of, a number of items seized by the Narcotics Strike Force in a search of the Hernandez home on November 11, 1971. Heroin seized included 2.08 grams of white powder (35.1% pure) found in one of the wife's housedresses, seven or eight small decks of heroin (8% pure) found scattered around the bathroom, and 32.75 grams (37.1% pure) found floating in the cistern connected with the house. The officers also seized from a dresser drawer in the master bedroom 29.67 grams

of a white powder proven to be 6.6% pure methadone. Also found in or on top of the dresser were two spoons—one coated with heroin—some air mail envelopes, a book from which paper had been cut, and numerous small slips of paper.

The Government contended that the quantity of heroin combined with the paraphernalia, such as spoons and paper slips, demonstrated an intent of the appellants to distribute the heroin. Although it did not offer scientific evidence that the seized paper slips were made of the same paper as that in which the decks of seized heroin were wrapped, the Government urged that the papers were of the type used to package heroin. Its expert testified that the heroin found in the cistern could be divisible into 2,000 decks, saleable at $5 each. The only other incriminating evidence was one officer's testimony that he saw Iris Hernandez through a window pouring some white powder into the sink and toilet after officers knocked at her front door.

Appellants raise numerous grounds for reversal of their convictions, more substantial of which are the assertions that (1) the jury instructions were in plain error because they included an Allen Charge; (2) they were deprived of their right to effective assistance of counsel by being represented by the same attorney; and (3) Iris Hernandez's admission of ownership of a housedress should have been excluded from the evidence because it was made during custodial interrogation absent any Miranda warning. We reverse the convictions.

■ The fairness of appellants' trial was jeopardized by the inclusion in the jury instructions of a form of the Allen Charge, urging a minority of the jury to give special consideration to the views of the majority in order to avoid a hung jury. The judge instructed in his charge in chief:

If there is disagreement as to the innocence or guilt of both defendants, or either one of them, those in the minority should be

willing to reexamine and reevaluate their ideas and exchange their views with the thoughts of those Jurors who constitute the majority.

The same can be said for a disagreement as to whether either one or both of them are guilty of the lesser included offense or guilty of the offense charged in the information. If there is disagreement as to which one it is, again, those in the minority ought to be willing to reexamine and reevaluate their concepts and their ideas with those in the majority to the end that unanimity might be obtained and a verdict returned.

The Allen Charge, originally approved in Allen v. United States, 164 U.S. 492 (1896), has created considerable judicial tribulation over the years. In light of the constitutional principle that the judge may not "coerce" the jury in its determination of guilt or innocence, courts have had to determine from time to time whether variations of the Allen Charge, given in many different circumstances, have injected coercion into the fact finding process. Recognizing the inherent potential of the charge to coerce and the inscrutable problem of determining in each case whether such coercion actually existed, we prospectively banned the use of the Allen Charge in this Circuit in United States v. Fioravanti, 412 F.2d 407 (3d Cir.), cert. denied, sub. nom. Panaccione v. United States, 396 U.S. 837 (1969), as part of our supervisory authority over the district courts. The District of Columbia and Seventh Circuits have done likewise. United States v. Thomas, 449 F.2d 1177 (D.C. Cir. 1971); United States v. Brown, 411 F.2d 930 (7th Cir. 1969), cert. denied, 396 U.S. 1017 (1970).

One of the coercive elements of the Allen Charge in the form often given is its admonition to the minority jurors to give deference to the views of the majority. United States v. Johnson, 432 F.2d 626, 633 (D.C. Cir. 1970). The instruction given in the present case includes that element. The minority was told to "reexamine and reevaluate

their concepts and their ideas with those in the majority to the end that unanimity might be obtained and a verdict returned." Our prospective ruling in Fioravanti was aimed, among other things, at eliminating such a coercive influence from charges used in the Circuit. 412 F.2d at 416–17.[1]

In order to prevent any confusion among the district courts, we explicitly warned in Fioravanti:

> Hereafter, in this circuit, trial judges are not to give instructions either in the main body of the charge or in the form of a supplement that direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his. Such an instruction will be deemed error, normally reversible error. Conceivably, in very extraordinary circumstances, the error may be found so inconsequential as to avoid the necessity of reversal on appeal. But hereafter this court will not let a verdict stand which may have been influenced by an Allen Charge.

412 F.2d at 420. Finding no such "extraordinary circumstances" in the present case,[2] although no objection was made to the charge at trial, we find plain error and reverse the convictions on this ground. We reiterate our suggestion in Fioravanti, 412 F.2d at 420 n. 32, that trial judges restrict their jury instructions on the deliberative process to the charge suggested by Mathes and Devitt, "Federal Jury Practice and Instructions," 1965, § 79.01.[3]

Since we must reverse the convictions, we need not consider all of the alleged errors asserted. Some comment, however, should be addressed to the issue raised concerning the right to the effective assistance of counsel because

---

[1] Although not per se banning use of the Allen Charge, the First Circuit has banned any use of the charge which speaks to the minority, but not the majority. United States v. Flannery, 451 F.2d 880, 883 (1st Cir. 1971).

[2] As we note, at page 6 infra, the evidence pointing to an intent to distribute heroin by each defendant here was not overwhelming. Although each defendant was charged with only one count, the jury deliberations lasted two hours and twenty-three minutes.

[3] This charge is now incorporated in the second edition of Mathes and Devitt. See Devitt and Blackmar, "Federal Jury Practice and Instructions," 1970, § 17.05.

the appellants must be awarded a new trial. They were represented by the same retained counsel throughout the trial. Although they never requested separate counsel; they now allege they were prejudiced by the joint representation at trial. Prior to trial, a motion for severance had been made and denied. At the time, the prosecutor had requested the court to consider the possibility that joint representation would be prejudicial to the appellants if severance were not granted. Appellants, however, were never apprised by the court of the dangers of joint representation, nor was their counsel asked about possible conflicts of interest in such representation.

The Supreme Court has held that the Sixth Amendment right to fair and effective assistance of counsel can be abridged when several defendants are represented by one counsel. Glasser v. United States, 315 U.S. 60 (1942). Although recognizing that this constitutional right could be waived, the Court said any waiver must be made knowingly and intelligently. 315 U.S. at 70–71. Drawing on Glasser's imposition on the trial judge of a duty to preserve a defendant's right to effective assistance of counsel, the District of Columbia Circuit has required trial judges to ascertain from defendants whether their choice of joint counsel is an informed decision. Campbell v. United States, 352 F.2d 359 (D.C. Cir. 1965). We have never gone so far as to impose this affirmative obligation on the trial judge, United States v. Rispo, 470 F.2d 1099 (3d Cir. 1973). We have, however, refused to find a waiver of this right in the face of a silent record on the issue, noting that Glasser required "the trial judge . . . to 'indulge every reasonable presumption against the waiver.'" Government of the Virgin Islands v. John, 447 F.2d 69, 74–75 (3d Cir. 1971). In the present case, we are again faced with a silent record. Despite the prosecutor's expression of concern, the trial judge did not apprise appellants of the perils of joint rep-

609

resentation. Nor does the record indicate that defense counsel explained the dangers to the clients.

We recommend, that on the retrial of this case, the trial judge warn each defendant of the possible dangers of joint representation. In order to have convicted both husband and wife, the jury had to infer intent to distribute on the part of each. None of the seized evidence pointed specifically at the husband; the only evidence pointing specifically at his wife was the discovery of a small quantity of heroin in her housedress and the testimony that she had been seen pouring white powder into the sink and toilet when officers arrived to search. The evidence which may have been crucial to indicate more than mere possession, i.e., an intent to distribute, was the large quantity of heroin found in the cistern. Neither appellant was shown to have been aware of this contraband.

We recently reversed a conviction for heroin acquisition where "the evidence provided no more than an occasion to speculate whether he [appellant], or his brother, or both of them knew of the hidden heroin and exercised control over it." United States v. Bonham, 477 F.2d 1137 (3d Cir. No. 71-2097, filed April 2, 1973). The evidence in Bonham showed only that heroin was seized from a hidden recess behind a door frame in a bedroom shared by appellant and his brother. Although we did not reverse on the grounds that joint representation of appellant and his brother at trial denied appellant effective assistance of counsel, we noted that counsel was inhibited in exculpating appellant because to do so would have inculpated his brother.

Bonham, and earlier cases such as Delgado v. United States, 327 F.2d 641 (9th Cir. 1964), and United States v. Holland, 445 F.2d 701 (D.C. Cir. 1971), recognize that there is always a close question of sufficiency of evidence when two persons are jointly charged with possession of

narcotics when the only proof is that the narcotics were found in the zone of control of both persons. The problem is exacerbated in the present case where an intent to distribute is charged on the basis of narcotics found within the zone of control of both appellants.

When both defendants are represented by the same counsel, counsel may understandably be inhibited in his efforts to demonstrate that one or the other defendant was the guilty party. Although we need not decide on this appeal whether counsel for the Hernandezes faced such a conflict of interest as to deprive either appellant of his or her right to effective assistance of counsel, see United States v. Rispo, 460 F.2d 965 (3d Cir. 1972), Walker v. United States, 422 F.2d 374 (3d Cir. 1970), we believe the dangers inherent in joint representation are serious enough here to make it highly desirable that they be apprised of them. If such dangers are communicated to the appellants, difficult questions of whether a conflict of interest arose because of joint representation can be avoided. Appellants will intelligently be given the choice of whether to reject joint representation or to waive their right to the unfettered representation made possible by separate counsel.

The judgments of the district court will be reversed.

---

MARIS, *Circuit Judge*, dissenting.

I do not think that the charge of the court in this case, to which significantly no objection was made at trial, was given under circumstances similar to those in United States v. Fioravanti, 3 Cir. 1969, 412 F.2d 407, nor do I believe that the rule of that case should be extended to cover the situation disclosed by this record. In my view the court did not commit reversible error in failing to apprise the defendants, who were represented by retained

counsel, of their right to separate representation. Nor do I think that the court erred in receiving in evidence the wife-defendant's admission of ownership of the housedress found in the search of their home since the officers' request to her to remain seated on the living room. couch during the search, where she was seated when she made the admission, did not in my view, constitute an arrest which would bring into play the rule of the Miranda case.