UNITED STATES of America ex rel. Maria HORTA, Appellant,

v.

John DeYOUNG, Warden Passaic County Jail, et al., Appellees.

No. 75–1378.

United States Court of Appeals, Third Circuit.

Argued Sept. 12, 1975.

Decided Oct. 2, 1975.

---

Stanley C. Van Ness, Public Defender, Randall W. Westreich, Asst. Deputy Public Defender, East Orange, N. J., for appellant.

William F. Hyland, Atty. Gen. of N. J., Trenton, N. J., Howard Alan Cohen, Joseph J. Rodgers, Deputy Attys. Gen., Div. of Crim. Justice, Appellate Section, East Orange, N. J., for appellees.

Before ALDISERT, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

This is an appeal from an order dismissing, without an evidentiary hearing, a petition for a writ of habeas corpus. Petitioner Maria Horta contends that at her trial in Superior Court, Passaic County, New Jersey, she was denied the sixth amendment right to the effective assistance of counsel because she and her co-defendants, Angel Horta (her husband) and Roberto Rosado (her son-in-law), were represented by a single retained attorney. All three defendants were charged with unlawful possession of lottery slips, N.J.Stat.Ann. § 2A:121–3(b) (1969) and working for a lottery operation, N.J.Stat.Ann. § 2A:121–3(a) (1969). Maria Horta alone was also charged with maintaining a gambling resort. N.J.Stat.Ann. § 2A:112–3 (1969). After her conviction and sentence the New Jersey Public Defender appeared on her behalf and appealed to the Superior Court, Appellate Division, which affirmed. The Supreme Court of New Jersey denied certification. *State v. Horta*, 66 N.J. 337, 331 A.2d 37 (1974). In the state court proceedings Maria Horta raised the sixth amendment issue which is the basis for her federal habeas petition. The district court concluded that the state trial court did not advise petitioner of her right to separate counsel and that there was no express waiver of that right in the record. *See Government of the Virgin Islands v. Hernandez,* 476 F.2d 791, 794 (3d Cir. 1973); *Government of the Virgin Islands v. John,* 447 F.2d 69, 74 (3d Cir. 1971). In this situation we have previously held that "upon a showing of a possible conflict of interest or prejudice, however remote, we will regard joint representation as constitu-

tionally defective." *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 210 (3d Cir. 1973); *Walker v. United States,* 422 F.2d 374, 375 (3d Cir.), *cert denied,* 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970). This test is consistent with the principles announced in the leading case of *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), wherein Justice Murphy recognized the difficulty, if not impossibility, of determining the precise degree of prejudice sustained by a defendant as a result of joint representation. Calling the efforts to determine actual prejudice "at once difficult and unnecessary", Justice Murphy stated that "the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. at 76, 62 S.Ct. at 467.

■ Purporting to apply the *Walker-Hart* test, the district court concluded:

"Although a hypothetical claim of conflict of interest could be urged by petitioner, as well as by any defendant who was legally represented jointly with another co-defendant, I find after reviewing the entire record in this matter, and especially petitioner's sworn testimony, that petitioner has not demonstrated a real possibility of prejudice on the issues raised. *United States ex rel. Horta v. DeYoung,* Civil No. 74–1960 (D.N.J. Feb. 5, 1975).

Instead of examining the record to determine whether or not separate representation might have made a difference in petitioner's choice of a defense strategy that might have differentiated her position from that of her co-defendants, the district court merely suggested, after the fact, that no other defense strategy or technique would now be consistent with the unified defense offered at trial. The *Walker-Hart* test does not permit such after-the-fact rationalizations. The presentation of a consistent defense, far from precluding the possibility of prejudice, may even be evidence that the lack of independent counsel hindered development of the distinguishable positions of the separate defendants at trial. *See, e. g., Glasser v. United States,* 315 U.S. *supra* at 75, 62 S.Ct. at 457; *Sanchez v. Nelson,* 446 F.2d 849, 850 (9th Cir. 1971) (per curiam); *State v. Green,* 129 N.J. Super. 157, 322 A.2d 495 (App.Div.1974). Our examination of the state court record convinces us that there was a "possible conflict of interest or prejudice." *Walker v. United States, supra* at 375. Thus we reverse.

■ With respect to the "working for a lottery" charge, the state's evidence consisted of the observations of Paterson police officers who conducted a surveillance of petitioner's grocery store. That evidence strongly suggested that the male defendants were engaged in taking bets. During key betting hours people entered the store, exchanged money with the men behind the counter, but did not make any purchases. Moreover, the affidavit supporting the search warrant which produced the alleged betting paraphernalia mentions that an informant placed bets with men in the store. No woman, however, was mentioned in the affidavit or in police testimony as having been observed taking bets. But in cross examination of Detective Raymond Zdanis who conducted the surveillances and signed the affidavit, defense counsel made no serious effort to focus the jury's attention on the fact that petitioner was absent from the store during the observed activities. Such a strategy, of course, would have tended to direct attention to the two male co-defendants who were present. Even in arguing a motion for a judgment of acquittal, defense counsel did not point to petitioner's absence from the store during key betting hours and thereby contrast her situation with that of her co-defendants. Instead, defense counsel's argument treated his clients generically.

A counsel looking only to petitioner's interests should have asked for an instruction, pursuant to *Rule* 6 of the *New Jersey Rules of Evidence,* limiting the admissibility of the surveillance evidence to the male defendants. Requesting such an instruction, of course, would also

have focused the jury's attention on them rather than Maria Horta. No request, however, was made for a limiting instruction.

The inadequate cross examination of key government witnesses regarding petitioner's absence from the store during betting hours and the failure to request a limiting instruction were, of course, consistent with the defense strategy adopted by the male co-defendants. Since they were observed during the surveillances, their best defense strategy was to deny that what the police observed was betting activity and to deny that what the police seized was betting paraphernalia. Petitioner, independently represented, might well have chosen not to assume the burden of denying the nature of the observed activity or the seized materials. A number of more plausible defense strategies were certainly available. In view of the record we are convinced that petitioner may have been prejudiced in the jury's opinion by adopting unnecessarily an inherently incredible defense theory.

With respect to the "possession" charge, the record discloses the typical situation of contraband found in the zone of control of more than one person. It has been frequently said that a possession charge uniquely requires individual counsel. See, e. g., Government of the Virgin Islands v. Hernandez, supra at 794; State v. Green, 129 N.J.Super. at 163, 322 A.2d at 498; People v. Thompson, 13 Cal.App.3d 47, 91 Cal.Rptr. 341 (1970). In this case, with a single exception, the gambling paraphernalia (lottery slips, chinese number cards, etc.) was seized in areas of common control. Some lottery slips, however, were found in the pocket of either a grocer's white coat hanging behind the counter (Detective Colon's version) (2T. at 35) or a woman's sweater on a chair near petitioner (Detective Trifari's version) (3T. at 29–30). Defense counsel made no effective effort to capitalize on this contradiction in the state's case by emphasizing that the grocer's white coat might belong to one of the male defendants and

that Detective Colon's testimony suggesting that the betting slips in the coat were also found in an area of common control was more credible.

Only Maria Horta was indicted on the "maintaining" charge, apparently because licenses for the sale of milk and food were issued in her name. The testimony at trial disclosed that Maria Horta and Angel Horta were co-owners of the grocery store. (3T. at 10, 23). The maintaining statute, N.J.Stat.Ann. § 2A:112–3, has been interpreted as requiring proof of intention that persons should resort to the place for the purpose of gambling. See, e. g., State v. Puryear, 52 N.J. 81, 243 A.2d 812 (1968); State v. Costa, 11 N.J. 239, 94 A.2d 303 (1953). Considering that Maria Horta, a Spanish-speaking mother of infant children, was at most only a co-owner, it is at least puzzling why defense counsel made no argument to the jury that if anyone should have been charged with maintaining a gambling resort, it should have been Angel Horta, who was present during the critical betting period. Moreover, no effort was made in summation to emphasize that the state's failure to place her in the store during that critical betting period bore on the issue of intent to maintain a gambling resort. Instead, defense counsel's argument advanced only the theory that no one was engaged in gambling. It is significant that even the sentencing judge remarked that the maintaining charge was "technical" because the licenses had been issued in Maria Horta's name, but that her co-defendants were the ones who really were maintaining the gambling resort. (Sentencing transcript at 7–8).

In sum, then, the state court record establishes that there was a possibility of prejudice to Maria Horta, however remote, from joint representation of three co-defendants with conflicting interests. This was, in the absence of a waiver, a deprivation of the sixth amendment right to the effective assistance of counsel which warrants habeas corpus relief. Maria Horta's case is be-

fore us in circumstances virtually identical with those in *United States ex rel. Hart v. Davenport, supra,* and the same relief is required. The order of the district court will be reversed and the case remanded with a direction that the writ of habeas corpus should issue discharging the petitioner Maria Horta from state custody unless within a reasonable time to be fixed by the district court she is afforded a new trial.