**UNITED STATES of America ex rel. David Allen MORGAN, Petitioner,**

v.

**Paul W. KEVE, Director of the Division of Adult Corrections of the State of Delaware, Respondent.**

Civ. A. No. 75–319.

United States District Court,
D. Delaware.

Dec. 28, 1976.

L. Vincent Ramunno, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondent.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The petitioner, David Allen Morgan, along with a co-defendant, Danny Hill, was convicted in the Superior Court of the State of Delaware of rape and kidnapping in September, 1971.[1] He received, and is now serving, a sentence of life imprisonment. Morgan now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

A brief recitation of the facts is essential to an understanding of the issues presently before this Court. The alleged rape occurred on October 19, 1970. The petitioner was arrested four days later, and, while in custody, gave a statement containing certain inculpatory remarks. Co-defendant Hill was subsequently arrested, and, he too, gave statements containing remarks that tended to inculpate both him and Morgan. At trial, although two attorneys served as counsel for the defense, they represented Hill and Morgan jointly. No inquiry was conducted by the trial judge into petitioner's selection of joint counsel.

Regarding the admissibility of the pretrial statements, the trial court held there had been compliance with the *Miranda* rule but did not reach the issue of voluntariness. Thereafter the statements of both defendants, including those of Hill that implicated Morgan, were offered by the State for impeachment purposes. No instruction with respect to the voluntariness of either statement was given to the jury.

On appeal, the Delaware Supreme Court remanded as to both defendants, ordering that a hearing be held on the issue of

1. *State v. Hill*, Del.Super., Cr. A. No. 1337—1970.

voluntariness.[2] After conducting such a hearing, the original trial judge found both statements to have been voluntarily given.[3] On appeal once more, the convictions were affirmed.[4]

As grounds to support the issuance of the requested writ of habeas corpus, petitioner claims: a) he was denied effective assistance of counsel at trial because he was represented jointly with Hill, b) the fact of joint representation deprived him of his right to confront, through cross-examination, the inculpatory remarks made by Hill in his pre-trial statement, c) his right to due process was violated when the trial court failed to instruct the jury on the issue of the voluntariness of his pre-trial statements, and d) the trial judge's later determination that said statements were voluntarily given was based on insufficient evidence.[5]

### Joint Representation as a Denial of Effective Assistance of Counsel

Petitioner's first constitutional attack upon his conviction is that the joint representation by his appointed counsel worked a denial of the effective assistance of counsel guaranteed to him by the Sixth and Fourteenth Amendments. Specifically, he alleges that such joint representation gave rise to a conflict between the separate duties owed to him and co-defendant Hill, and that this conflict prejudiced his defense.

*Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) teaches that joint representation might well lead to a denial of effective assistance of counsel. There is disagreement among the Circuit Courts of Appeals concerning the procedural safeguards necessarily appended to this right, as well as the degree of prejudice which must be shown in order to establish that the right to effective assistance of counsel has been breached. According to

the Second Circuit Court of Appeals, the majority rule, as well as the rule of that circuit, is "that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel." *United States v. Lovano*, 420 F.2d 769, 773–74 n.14 (2d Cir.), *cert. denied*, 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970).

In disposing of this aspect of petitioner's constitutional claims, the Delaware Supreme Court applied the standard employed by the Second Circuit:

"As to conflicts between these defendants, they have not identified any in the legal sense which was the product of or which resulted from joint representation; nor have they shown prejudice as a result thereof. [footnote omitted] Although courts do not engage in nice calculations as to the quantum of prejudice involved, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and *Lollar v. United States*, 126 U.S.App.D.C. 200, 376 F.2d 243 (1967), it is settled law that some conflict must be established. *United States v. Lovano*, 2 Cir., 420 F.2d 769 (1970); *Lugo v. United States*, supra [350 F.2d 858]. None has been shown here." (*Hill v. State*, 316 A.2d 557, 558 (Del. 1974).)

The Third Circuit, on the other hand, has expressly rejected the Second Circuit rule and has held, instead, "that upon a showing of possible conflict of interest or prejudice, however remote, we will regard joint representation as constitutionally defective." *United States ex rel. Horta v. DeYoung*, 523 F.2d 807, 808–09 (3d Cir. 1975); *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973); *Walker v. United States*, 422 F.2d 374 (3d Cir.), *cert. denied*, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970).

---

2. *Hill v. State*, 316 A.2d 557 (Del.1974).

3. *Hill v. State*, Cr. A. No. 1337—1970 (Del.Super.1975) (Memorandum Opinion).

4. *Hill v. State*, 347 A.2d 131 (Del.1975).

5. Two additional claims, namely those relating to the denial of a speedy trial and Morgan's appearance, at his trial, in prison garb, have been previously dismissed for lack of exhaustion of state remedies by prior Order of this Court, dated April 7, 1976.

A third approach, which focuses on the attendant procedural safeguards rather than the degree of prejudice required, was called to the Court's attention by the petitioner. The D.C. Circuit has imposed an affirmative duty upon the trial court to "ascertain whether each defendant has an awareness of the potential risks of [retaining joint counsel] and nevertheless has knowingly chosen [to do so]." *Campbell v. United States*, 122 U.S.App.D.C. 143, 352 F.2d 359, 360 (1965). This rule has been characterized by the Third Circuit as being one which *assumes* prejudice in the absence of such an inquiry by the trial judge.[6] Thus, in a case where no such inquiry was undertaken, the assumed prejudice renders joint counsel constitutionally defective *per se*.

While going no further than the degree of prejudice standard enunciated above, the Third Circuit has hinted its approval of the *per se* rule, both in *Hart, supra*, and in *Government of Virgin Islands v. Hernandez*, 476 F.2d 791 (3d Cir. 1973).

Because of its ease of mechanical application, the *per se* rule has much that commends it. Were such a rule applied, then the Third Circuit standard, which can charitably be characterized as difficult to apply, would be unnecessary because the focus of habeas review in the context of joint representation, in most cases, would be shifted from an after-the-fact examination of what could have, or should have, been done by defense counsel, to whether, after careful inquiry, the trial court found that a petitioner was aware of the dangers inherent in joint representation and chose to waive his right to separate counsel. The application of such a *per se* rule is also arguably consistent with the Supreme Court's holding in

*Glasser, supra*, in that it avoids the condemned "nice calculations as to the amount of prejudice arising from its [right to the effective assistance of counsel] denial." *Glasser, supra*, 315 U.S. at 76, 62 S.Ct. at 467. On the other hand, while the Third Circuit standard is clearly a response to the *Glasser* holding, it appears that the required search for some "possible conflict of interest or prejudice, however remote," ineluctably leads to the "nice calculations" criticized by the *Glasser* Court.

■ The imposition of an affirmative duty upon a trial judge to conduct an inquiry into the selection of joint counsel is arguably foreshadowed in the Third Circuit by dicta approving the *per se* rule,[7] especially when considered along with the rather minimal showing required, under the present standard, to establish prejudice of constitutional dimension arising under the Sixth and Fourteenth Amendments. Nonetheless, the Third Circuit has not yet imposed a *per se* rule under its supervisory powers, nor has it squarely held joint representation to be a *per se* violation.[8] Further, it has recognized that a "review of the state court proceedings is narrow for 'not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." ' " *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir. 1976). Comity considerations and grave reservations about the lasting viability of a *per se* rule as a matter of constitutional dimension impel me to decline petitioner's invitation to adopt a *per se* rule. Accordingly, attention is now turned to applying the Third Circuit test.[9]

---

**6.** *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 211 (3d Cir. 1973).

**7.** *Hart v. Davenport, supra; Government of Virgin Islands v. Hernandez, supra.*

**8.** *Cf. United States ex rel. Horta v. DeYoung*, 523 F.2d 807 (3d Cir. 1975) (habeas writ granted); *Hart v. Davenport, supra* (habeas writ granted); *Government of Virgin Islands v. John*, 447 F.2d 69 (3d Cir. 1971) (habeas writ granted); *but cf. United States v. Rispo*, 470

F.2d 1099 (3d Cir. 1973). If imposition of an affirmative duty upon a trial judge to conduct an inquiry into the selection of one attorney for two or more defendants occurs, it will be the product of an exercise of the Third Circuit's supervisory power.

**9.** Petitioner also alleges that no waiver of his right to effective assistance of counsel was ever given. The conclusion below that this right was not impaired obviates the need for any inquiry into its waiver.

In assessing whether there has been "a showing of possible conflict of interest or prejudice, however remote" the record has been examined "to determine whether or not separate representation might have made a difference in petitioner's choice of defense strategy that might have differentiated [his] position from that of [his] co-defendant." *United States ex rel. Horta v. DeYoung, supra,* 523 F.2d at 809. In reviewing the trial record to ascertain what other defense stratagem might have been employed, it must be kept in mind that defense counsel had formidable obstacles in the form of incontrovertible facts, viz., (1) the eye witness identification of petitioner and his co-defendant by the victim, (2) sexual intercourse took place, and (3) the prosecuting witness stated that she offered only minimal resistance because she feared other physical harm. Against this background, and following *Horta,* the appropriate method to be employed in this Circuit is to seek to identify those portions of petitioner's trial defense where separate counsel, unburdened by possibly conflicting duties, could have taken a different, and possibly more successful, "tack" than was taken by joint counsel. For reasons set forth below, it is concluded there has been absolutely no showing of a possible conflict of interest or prejudice by reason of petitioner's joint representation with his co-defendant.

Petitioner alleges that two sets of factual circumstances raise areas of possible prejudice. First, he points to the fact that he and his co-defendant offered different theories of defense to each of the charges against them. Secondly, Morgan asserts that his counsel's duty to Hill prevented vigorous cross-examination of Hill regarding his pretrial remarks that tended to inculpate Morgan.

█ Regarding the first claim of ineffective assistance of counsel, it is true that, as a defense to the rape charge, petitioner did offer a theory different from that of his co-defendant. Hill's sole defense was consent, and he was willing to stipulate to the fact that he had had intercourse with the prosecutrix. The petitioner, on the other hand, while asserting that his initial advances went unresisted by the prosecutrix, maintained that his state of alcoholic intoxication rendered him unable to perform the act. Beyond establishing this fact of differing defense theories, however, petitioner has failed to show how such a difference resulted in any possibility of prejudice. In attempting to convince the jury that the prosecutrix consented to intercourse with Hill, it appears that joint counsel was not, in any way, disabled from zealously advancing Morgan's defense of physical inability. Because counsel was not prevented, by the fact of joint representation, from proceeding as separate counsel might have, no showing of a possibility of prejudice has been made.

Had co-defendant Hill similarly denied having had intercourse with the prosecutrix, thus offering the *same* defense as Morgan, then the possibility of prejudice would be clear. The jury heard and obviously believed the prosecutrix and medical testimony establishing the fact of intercourse. Therefore, if *both* defendants had denied having done the act, the jury would probably have concluded that at least one of the defendants had lied. Clearly, it would then have been in the interests of each defendant to show that it had been his co-defendant, and not himself, who was guilty. In such a situation, where the best exculpatory theory is one which necessarily inculpates a co-defendant, the possibility of prejudice is inherent where defendants are represented jointly. *See e. g., United States ex rel. Hart v. Davenport, supra; Government of Virgin Islands v. Hernandez, supra; United States ex rel. Small v. Rundle,* 442 F.2d 235 (3d Cir. 1971). Absent from the instant case, however, were possible defenses, the advancement of which would have made the inculpation of a co-defendant necessary or advantageous. In short, while the defense theories of Hill and Morgan differed, their joint counsel could, and did, offer both without prejudicing either.

█ The petitioner also claims that his defense to the charge of kidnapping was prejudiced by a conflict with that of Hill.

An examination of the record indicates no such conflict or prejudice. Morgan testified that he stopped the car in which he and Hill were riding at Hill's direction, without knowing why he was told to stop; that Hill got out; and that he was unaware of the prosecutrix's presence until, apparently consensually, she approached the car with Hill.[10] Hill's testimony tended to support, rather than conflict with, Morgan's account of the events of the alleged rape.[11] Additionally, joint counsel, through Hill's testimony, made an effort to lessen the impact of that portion of the prosecutrix's testimony that provided significant evidence that Morgan was aware that her presence in the car was not voluntary. On direct examination, the prosecutrix testified that Morgan and Hill were conversing in the car and that Morgan, apparently getting impatient, said to Hill, "Tell her what we are going to do."[12] Hill responded by saying to the prosecutrix, who was seated in the car between the two defendants, "We are going to rape you and then we don't know what."[13] A permissible inference from this colloquy was that Morgan shared Hill's intention to take the prosecutrix away, against her will, and to rape her. In an apparent effort to combat that inference, defense counsel asked Hill, upon direct examination, "Was David talking much?", to which Hill replied, "I don't think he was saying anything."[14] Petitioner's trial counsel noted Hill's supporting testimony in making a motion for judgment of acquittal with respect to Morgan only.[15] The very fact that this motion was made solely on Morgan's behalf indicates that joint counsel were not prevented by conflicting duties from pursuing the petitioner's best interests.

10. Trial Transcript (T.T.) at 278.

11. T.T. at 204.

12. T.T. at 35.

13. Id.

14. T.T. at 207.

15. T.T. at 275.

■ The petitioner's next claim regarding alleged ineffective assistance of counsel involves co-defendant Hill's pre-trial statement that "[Hill] had intercourse with her and Lucky [Morgan] had intercourse with her."[16] Morgan raises the spectre of counsel's dilemma: Should joint counsel have impeached Hill's credibility, in order to aid Morgan, or refrain out of duty to Hill, and allow Hill's statement to implicate Morgan? If Hill had steadfastly asserted, on the stand, the truth of the pre-trial statement, then this dilemma would appear real and disabling. However, it is clear upon the record that no impeachment was necessary to Morgan's defense, because Hill, from the very first mention of his pre-trial statement, denied its accuracy, saying, instead, that he did not "believe David had intercourse with her."[17] Hill having done all that a separate counsel for the petitioner could do, no disability was placed upon joint counsel.

Counsel, in concert with petitioner's co-defendant, did all that could be done in view of the unshakeable identification of the defendants and the strong, damaging, substantive testimony of the victim. That circumstance distinguishes the instant case from *Government of Virgin Islands v. John, supra.*[18]

### Alleged Denial of Right to Confrontation

■ The alleged conflicts of interest raised by the joint representation, and the resulting disability placed upon counsel regarding the cross-examination of Hill, also provide the basis for the petitioner's second constitutional claim—i. e., that his right of confrontation was denied. The above conclusion regarding the petitioner's ineffective assistance of counsel controls the out-

16. T.T. at 258.

17. T.T. at 261. *See also* T.T. at 257–58.

18. In addition to being distinguished on its facts, that portion of *Government of Virgin Islands v. John, supra,* which arguably controls the instant matter was an alternate holding expressly noted by the Third Circuit to have been made without benefit of briefs.

come on the right to confrontation issue. Because Hill denied the accuracy of his pre-trial statement himself and otherwise tried to exculpate Morgan, no right to confrontation was abridged.

### Failure to Instruct the Jury on Voluntariness

■ The petitioner asserts that the trial court committed constitutional error in failing to instruct the jurors that they were to make a determination of the voluntariness of his pre-trial statement, and that, if they were to find the statement involuntarily made, then it could not be used in the ultimate determination of guilt or innocence. As authority for his proposition, the petitioner cites *Wilson v. State*, 10 Terry 37, 109 A.2d 381 (Del.Super.1954). Assuming *arguendo* that Delaware law entitles a defendant to such an instruction, such right cannot be the basis for *habeas* relief unless it is of federal constitutional dimension. *See Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *U. S. ex rel. Hayward v. Johnson*, 508 F.2d 322, 330 (3d Cir. 1975).

■ *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), relied upon by petitioner, does not suggest that his right to such an instruction is mandated by the federal constitution. The infirmity with the challenged procedure in *Jackson* was that the trial court, assuming that it found contradictory evidence on the issue of voluntariness, sent the question to the jury without any determination of its own. Inherent in this procedure was the danger that the jury, when considering both the guilt/innocence and voluntariness issues simultaneously, might allow strong evidence of guilt to influence its determination of voluntariness. Furthermore, a general verdict gave no indication that the two issues had been properly separated. Thus, *Jackson* requires an independent judicial determination of the voluntariness issue. *United States ex rel. Rush v. Ziegele*, 474 F.2d 1356, 1358 (3d Cir. 1973). At the same time, it is equally clear that *Jackson* does not require that the jury make a determina-

tion in addition to that of the court. *See Jackson, supra*, 378 U.S. at 378 n.8, 84 S.Ct. 1774; *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

■ Related to his challenge regarding the procedural safeguards attending the admission of pre-trial statements over claims of involuntariness, petitioner also complains that the independent judicial determination of voluntariness, required by *Jackson*, occurred only after reversal and remand by the Delaware Supreme Court. Such an "after the fact" determination, argues the petitioner, is an inadequate remedy for the trial court's failure to resolve the issue at trial, and, therefore, he is entitled to a new trial instead. I disagree. The procedure employed by the Delaware State courts was specifically recognized and approved of in *Boles v. Stevenson*, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964).

### Allegedly Erroneous Determination of Voluntariness

Petitioner's final claim challenges the determination of voluntariness made by the trial court at the limited post-trial hearing and affirmed by the Delaware Supreme Court.

Guidance for review, by a federal habeas corpus court, of such determinations made by state courts, is found in *United States ex rel. Rush v. Ziegele, supra*, 474 F.2d at 1358–59:

"Factual findings in state court proceedings are presumed correct unless the fact-finding procedures were not adequate to afford a full and fair hearing, or unless material facts were not adequately developed. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), now codified in 28 U.S.C. § 2254(d)(2) and (3). Determination of whether a confession was made voluntarily, however, is a mixed question of fact and law. Federal courts exercising habeas corpus jurisdiction, therefore, cannot abdicate their responsibility to assess whether state court judges have correctly applied federal constitutional standards. *Watts v. Indiana*, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801

(1949); *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 738 (3d Cir. 1973). Two questions thus are presented by appellant's claim that his confession should not have been submitted to the jury: (1) Was an adequate fact-finding hearing conducted by the state trial court? and (2) Was the trial court correct in determining [appellant's] confession was given voluntarily?"

*See also United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 51 (2d Cir.), *cert. denied*, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975); *United States ex rel. Dickerson v. Rundle*, 430 F.2d 462 (3d Cir.), *cert. denied*, 408 U.S. 928, 92 S.Ct. 2498, 33 L.Ed.2d 332 (1972).

■ Having conducted the two inquiries mandated by *Rush*, I find that petitioner Morgan was given a full and fair hearing on the issue of voluntariness by the state court; and, furthermore, that the determination reached was correct.

With respect to the first inquiry, the petitioner has raised no complaint alleging that the post-trial hearing was conducted unfairly or that material matters went undeveloped. Having reviewed the transcript, this Court concludes that petitioner was, in fact, given a "full and fair hearing."

■ The second inquiry requires a brief discussion of the evidence presented on the issue of voluntariness, and a measurement of the findings based on that evidence against constitutional standards. In conducting this inquiry, reference is necessarily made to the specifics of petitioner's claim, the record with respect to those specifics, and petitioner's background.

The petitioner's claim of involuntariness rests largely upon his assertion that he was under the influence of various drugs during the custodial interrogation. It is clear, however, that the trial court attached little, if any, credibility to Morgan's testimony regarding the drugged condition. The respondent might contend that such a determination of credibility is not reviewable by a federal court exercising habeas corpus jurisdiction. *See Jones v. Wainwright*, 494 F.2d 1184 (5th Cir. 1974); *Robertson v. Riddle*, 404 F.Supp. 1388 (W.D.Va.1975). This Court need not reach that question, because such a review, if conducted, would result in agreement with the state court's conclusion that Morgan's testimony concerning his allegedly drugged condition lacked credibility.

Two references to the record support such a finding. First, while Morgan gave testimony at his trial relating to the alleged involuntariness of his statement, no mention was made of the influence of drugs. That this claim did not surface until several months later, at the post-trial hearing, raises doubts about the credibility of the claim. Secondly, both the interrogating officer [19] and Morgan himself [20] testified that the petitioner was read, and did understand, his *Miranda* rights. This understanding seems inconsistent with the degree of intoxication that petitioner now alleges. Furthermore, the interrogating officer testified that the petitioner, except for slight nervousness, appeared normal.[21]

The petitioner also seeks to support his claim of involuntariness by suggesting that he gave his pre-trial statement out of fear, and that the giving of a statement presented an opportunity to end the interrogation. Again, the trial court chose to disbelieve him, and again, the record discloses good reason for such disbelief; for petitioner himself, at trial, denied such fear.[22] He also admitted that no threats or promises had been made.[23]

■ Morgan claimed that he had asked for an attorney before his statement was taken.[24] The context of that testimony indicates that the interrogating officer,

19. Hearing Transcript (H.T.) at 20.

20. H.T. at 89, 90; T.T. at 172.

21. H.T. at 113.

22. T.T. at 186.

23. *Id.*

24. T.T. at 180.

Trooper West, was present at the time of the request.[25] Later, however, petitioner stated that Trooper West was not present, and that he could not recall to whom he had made the request.[26] Trooper West denied ever receiving such a request.[27] In sum, the record supports a factual conclusion that Morgan never made the request. *Miranda* warnings having been given at "just about every door [Morgan] walked through," [28] and no request for counsel having been made, the trial court's conclusion that no *Miranda* violation was indicated was correct.

With respect to the petitioner's background, the trial court noted that he had completed the eighth grade and had been involved with law enforcement agencies on seven previous occasions.[29] Thus, Morgan was no stranger to police interrogation. Indeed, all of the foregoing reveals neither an individual whose "will was overborne," *Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), nor one whose statement was not the product of a "rational intellect and a free will," *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

It is concluded there is no merit to petitioner's contentions and that the determinations made by the State court were correct. For the reasons stated above, petitioner's application for a writ of habeas corpus will be denied.

---

**25.** T.T. at 180; *see also* T.T. at 175–76.

**26.** T.T. at 187.

**27.** H.T. at 22.

**28.** H.T. at 88.

**29.** H.T. at 118.