**Darrell Anthony JACKSON**

v.

**UNITED STATES of America.**

Civ. A. No. 74–2883.

United States District Court,
E. D. Pennsylvania.

Dec. 17, 1975.

Robert N. deLuca, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

Joseph F. Keener, Jr., Philadelphia, Pa., for Jackson.

## OPINION

DITTER, District Judge.

Presently before the court is the Section 2255 petition of Darrell Anthony Jackson, to vacate the sentence of fifteen years imprisonment imposed by this court following his conviction by a jury of bank robbery. The sole ground of the petition is that Jackson was denied the effective assistance of counsel in violation of the fifth and sixth amendments. In order to understand the theory on which petitioner proceeds, it is necessary to present a brief chronology of the circumstances surrounding his conviction.

Petitioner and co-defendants, Claude Lorenzo Corbitt and Harry Mims, were indicted on May 27, 1971, for the February 23, 1971, armed robbery of the Southeast National Bank, Exton, Pennsylvania. They were convicted on July 31, 1972.[1]   A fourth man, John Clark, had previously been charged in a separate indictment with bank robbery stemming from the same incident. Clark was tried separately and convicted August 6, 1971, almost a year prior to the

---

1.  Petitioner was tried three times, commencing on November 3, 1971. The first two trials resulted in hung juries.

commencement of the trial of Corbitt, Mims, and Jackson. However, an appeal of Clark's conviction was pending at the time of the trial of the latter three defendants. Both Clark and petitioner were represented by the same attorney, Nino V. Tinari, Esquire.

■ Petitioner contends that he was denied the effective assistance of counsel because a conflict of interest existed in Tinari's representing him at trial while at the same time prosecuting Clark's appeal.[2] Specifically, petitioner claims that Mr. Tinari may have foregone exploring the possibility of a negotiated guilty plea out of fear that, as a part of such agreement, the Government might demand that Jackson agree to testify against Clark if his conviction was reversed and a new trial granted by the Court of Appeals.[3]

At least since *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942), it has been clear that joint representation of co-defendants by a single attorney may amount to a denial of the right to the effective assistance of counsel in violation of the sixth amendment if a conflict of interest is thereby created. *Glasser*, however, did not satisfactorily resolve the question of whether an actual conflict of interest or prejudice must be shown. In reversing Glasser's conviction and ordering a new trial, the Supreme Court stated:

To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske [in addition to Glasser] is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.

Id. at 75–76, 62 S.Ct. at 467. This language suggested that no showing of an actual conflict of interest or prejudice need be made. Yet at the same time the Court refused to order a new trial for co-defendant Kretske since it found that he had suffered no prejudice from the joint representation. Id. at 76–77, 62 S.Ct. at 468. Thus, the problem faced by lower courts since *Glasser* has been to determine the extent of the showing that must be made by one seeking relief on these grounds. In response to this problem, the Court of Appeals for the Third Circuit adopted the position that:

There must be some showing of a possible conflict of interest or prejudice, however remote, before a reviewing court will find the dual representation constitutionally defective.

*Walker v. United States*, 422 F.2d 374, 375 (3d Cir.), cert. denied 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970).[4]

---

2. In *United States ex rel. Clark v. Guy*, 386 F.Supp. 1175 (E.D.Pa.1974), I denied co-defendant Clark's § 2255 petition to vacate or set aside sentence. In that proceeding Clark asserted ineffective assistance of counsel because Tinari had also represented Jackson, but advanced a somewhat different theory than that suggested in the instant matter.

3. At the hearing Jackson testified that at the time of the trials he believed that he had a good defense to the indictment, but that Tinari advised him not to testify in his own behalf because of his prior criminal record. Tinari later confirmed that this was in fact his reason for advising Jackson not to testify. Although I am not sure exactly what petitioner's counsel had in mind in developing this line of testimony, counsel for the

Government apparently believed that its purpose was to suggest that Tinari's advice may have been motivated at least in part out of fear that Jackson's testimony might later be used against Clark if he were given a new trial. Brief for the Government at 4. On the assumption that this was petitioner's counsel's purpose, in the absence of anything but unsupported speculation to the contrary, I accept Mr. Tinari's explanation of his reason for advising petitioner not to take the stand.

4. This standard has been consistently utilized in later cases in this Circuit. See *United States ex rel. Horta v. DeYoung*, 523 F.2d 807, 809 (3d Cir. 1975); *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 209– 10 (3d Cir. 1972); *United States v. Rispo*,

If the Walker standard is applied to the facts of the case at bar, it is clear that the petition must be denied. Petitioner's claim of conflict of interest is wholly without factual support. At the hearing I held in this matter, Mr. Tinari said he had not explored plea bargain possibilities on Mr. Jackson's behalf because Mr. Jackson had given him binding instructions not to do so (N.T. 29, 40).[5] Although Mr. Jackson denied having given any such direction to Mr. Tinari (N.T. 42), I find Mr. Tinari's testimony to be creditable and reject Mr. Jackson's insofar as it conflicts with that of Mr. Tinari.

Moreover, there are several other factors which reveal the completely speculative nature of petitioner's claim. First, in his post-trial motions and appeal, Clark's major contention was that his second trial constituted double jeopardy in light of the circumstances under which his first trial had been terminated. *United States v. Clark*, 346 F.Supp. 428 (E.D.Pa.1972), aff'd (by judgment order) 475 F.2d 1396 (3d Cir. 1973). Had the Court of Appeals reversed Clark's conviction on this ground, no new trial would have resulted.[6] Hence, the Government would have had no reason to seek petitioner's testimony as part of a plea agreement. Second, nothing in the circumstances of this case indicates that the Government might have viewed petitioner as more deserving of leniency than Clark or the other defendants, or have been willing to make any charge concession or to recommend sentence reduction for petitioner in return for his testimony against Clark. See

*United States ex rel. Small v. Rundle*, 442 F.2d 235, 238 (3d Cir. 1971).

Furthermore, it must be remembered that:

The Walker test of possible conflict of interest or prejudice however remote, must be applied . . . in light of the normal competency standard for adequacy of representation by counsel adopted in this circuit. *United States ex rel. Green v. Rundle*, 434 F.2d 1112 (3d Cir. 1970); *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970).

*United States ex rel. Hart v. Davenport*, 478 F.2d 203, 210 (3d Cir. 1973).

[T]he standard of adequacy of legal services . . . is the exercise of the customary skill and knowledge which normally prevails at the time and place.

*Moore v. United States*, supra, 432 F.2d at 736. In the instant case there can be little doubt that Mr. Tinari's representation of petitioner was more than adequate. Petitioner's present counsel, Joseph F. Keener, Esquire, concedes as much for at the hearing he stated:

Mr. Tinari represented him [petitioner] very ably. All the right questions were asked. Everything was done exactly as it should have been done, and no one, in my judgment, could have done it better . . . . (N.T. 38).

Having presided over the trials of petitioner, Corbitt and Mims, I am in a position to confirm Mr. Keener's observations. Mr. Tinari conducted a thoughtful and vigorous defense of the petitioner throughout, as is evidenced by the

---

460 F.2d 965, 970 (3d Cir. 1972); *United States ex rel. Small v. Rundle*, 442 F.2d 235, 237–38 (3d Cir. 1971).

5. In response to a question from petitioner's counsel, Mr. Tinari admitted that in other cases he had explored plea bargaining possibilities despite similar instructions from clients not to do so (N.T. 40, 41). Tinari explained that he did not do so in this case because Jackson had told him that there would be no purpose served by it, since

Jackson would in no way participate in or approve any plea bargaining agreements (N.T. 41).

6. It is conceded that Clark also challenged the use of identification evidence on the grounds that unconstitutional lineup procedures were employed. If the Court of Appeals had reversed Clark's conviction on this ground, a new trial would have been required.

fact that the first two trials resulted in hung juries.

Not only is the speculative nature of petitioner's claim apparent from the above circumstances, but petitioner in fact admits that this is so. During closing argument at the hearing, petitioner's counsel addressed the court as follows:

> Mr. Keener: Basically, Your Honor, what I am really saying is that that [exploring plea bargaining possibilities] wasn't done. Now it may not have been done for reasons that were really good reasons to Mr. Tinari and reasons that he thought were perfectly proper, but there are other reasons which may be operating on Mr. Tinari that he may or may not have been aware of. (N.T. 44).
>
> .    .    .    .    .    .
>
> Now, *everything that I have said is speculation,* but none of that [plea bargaining] ever had a chance to occur.    .    .    .    (N.T. 45) (Emphasis added).

In effect, petitioner would have this court speculate as to what was going through Mr. Tinari's mind during his representation of Mr. Jackson. I am then asked to conclude that in some vague and unspecified manner, perhaps without being consciously aware of it, Mr. Tinari may have been influenced to act adversely to petitioner's best interests because of his representation of Mr. Clark. Unless Walker and its progeny can be read as establishing a *per se* rule requiring that a conviction be set aside anytime that imaginative counsel can raise from a hypothetical conflict of interest a hypothetical prejudice, petitioner's conviction must stand. Believing that our Court of Appeals has established no such rule, I conclude that Jackson's petition must be denied.