**Danny Douglas HILL and David Allen Morgan, Defendants Below, Appellants,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Feb. 15, 1974.

Arlen B. Mekler, Asst. Public Defender, for appellants.

Richard R. Wier, Jr., State Pros., Wilmington, for appellee.

HERRMANN, C. J., and CAREY and DUFFY, JJ., sitting.

DUFFY, Justice:

Defendants were convicted of kidnapping and rape and they appeal alleging violations of their Federal rights.

## I

First, defendants say that they were denied effective assistance of counsel in violation of their Sixth Amendment rights because they were represented by the same trial attorneys (Public Defenders). Two attorneys were involved but both represented each defendant. Defendants now argue that such representation amounted to a conflict of interest sufficient to deprive them of constitutional rights.

▬▬ We hold that joint representation of co-defendants by the same attorney or attorneys does not, *per se*, amount to a denial of effective assistance of counsel.[1] United States ex rel. Small v. Rundle, 3 Cir., 442 F.2d 235 (1971); Lugo v. United States, 9 Cir., 350 F.2d 858 (1965). The general rule is that only when there is some indication by a defendant, by counsel or in the record that a conflict may be present is the Court under a duty to inquire into the question. United States v. Donovan, 3 Cir., 464 F.2d 497 (1972); United States v. Paz-Sierra, 2 Cir., 367 F.2d 930 (1966), cert. denied 386 U.S. 935, 87 S.Ct. 962, 17 L.Ed.2d 807 (1967); see also Moore v. State, Del. Supr., 268 A.2d 875 (1970). In short, any argument based upon joint representation of these defendants, without more, is without merit.

As to conflicts between these defendants, they have not identified any in the legal sense which was the product of or which resulted from joint representation; nor have they shown prejudice as a result thereof.[2] Although courts do not engage in nice calculations as to the quantum of prejudice involved, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and Lollar v. United States, 126 U.S.App.D.C. 200, 376 F.2d 243 (1967), it is settled law that some conflict must be established. United States v. Lovano, 2 Cir., 420 F.2d 769 (1970); Lugo v. United States, supra. None has been shown here.

▬ Finally, and of controlling significance, the Trial Judge was advised by defense counsel before the jury was sworn that counsel had indicated to another judge of the Superior Court that "there is no conflict of interest between the two" defendants. Beyond doubt the Court should have relied upon that representation and it did so. In determining whether a conflict exists, "the trial court must be able, and freely permitted, to rely upon counsel's representations that the possibility of such a conflict does or does not exist." Kaplan v. United States, 9 Cir., 375 F.2d 895 (1967), cert. denied 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967). That law applies here and the Court had no duty to investigate the possibility of conflict *sua sponte*.

---

1. Neither The Delaware Lawyer's Code of Professional Responsibility (DR 5–105), Del. C.Ann. Vol. 13, nor the ABA Standards for Criminal Justice (The Defense Function, Approved Draft, § 3.5) declares representation of multiple defendants to be a conflict of interest *per se*. Counsel has a duty to discuss any such possibility with his clients and make an independent determination that there is no conflict. Compare Super.Ct.Crim. Rule 14, Del.C.Ann.

2. Defendants point to slight factual differences in the evidence as to each of them. But it is undisputed that both defendants were in the car at the time the victim was transported from a city street in Newark to a rural area and that both were with her at the time sexual intercourse took place. Both defendants argued consent but one says that he was unable to complete the act. Any difference in their respective situations, however, is of no legal significance. See 11 Del.C. § 102 (which has since been repealed and replaced by provisions of the new Delaware Criminal Code, 11 Del.C. § 1 et seq.). For a discussion of some of the parameters giving rise to a conflict of interest, none of which are present in this case, see People v. Odom, 236 Cal.App.2d 876, 46 Cal. Rptr. 453 (1965). See also 34 A.L.R.3d 470. Defendants make no charge that counsel was ineffective, other than that which may follow from joint representation alone; they do not claim that they were incompetently represented. Compare Harris v. State, Del.Supr., 293 A.2d 291 (1972).

## II

Second, defendants argue that the Trial Court erred in permitting the jury to consider (for impeachment purposes) out-of-court hearsay statements of each co-defendant, respectively, in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). Those cases hold that the Confrontation Clause of the Sixth Amendment is violated when a co-defendant's out-of-court hearsay statement is admitted into evidence unless the declarant-defendant is available at trial for cross-examination thereon, and that a mere cautionary instruction to the jury does not adequately protect a defendant when the co-defendant does not testify.

Defendants claim that "the circumstances of the trial afforded no opportunity for cross-examination between the defendants". Although they do not elaborate upon this argument, presumably the circumstances to which they refer involve the joint representation since both defendants actually testified at trial.

We think that the implications of Bruton for this case must be considered in light of the Supreme Court's later decision in Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). There Justice Stewart wrote that

> "It was clear in Bruton that the 'confrontation' guaranteed by the Sixth and Fourteenth Amendments is confrontation at trial—that is, that the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the defendant can be cross-examined on the witness stand at trial."

See also California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed. 489 (1970). To the extent the Confrontation Clause is applicable, it is our view that its requirements were met because each defendant testified at trial and effective examination of each was made through their common counsel.

But a review of the record in this case makes clear that in its critical elements neither defendant testified "against" the other in the constitutional sense. The Sixth Amendment states that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; . . . ." As we have pointed out above, each defendant testified in defense of the charges, the testimony of each was substantially the same and each offered a common defense: consent to what was done. In short, there was no accusation against a co-defendant and the statements were not offered for that purpose. Their respective versions of the events were common, corroborative and exculpatory of both of them. Under these circumstances it would reduce the Clause to a legal fiction to regard each as a witness "confronting" the other. They stood together throughout the trial and they fail together in an appeal on this basis. Confrontation was not required by the Sixth Amendment. United States v. Tropiano, 2 Cir., 418 F.2d 1069 (1969), cert. denied 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970).

The procedure followed by the Trial Court in permitting impeachment use of prior statements indicated a conscientious regard for the rights of each defendant. The written statements were not admitted into evidence; all impeachment evidence was adduced orally with the witness reading aloud from the statement and then being questioned about what he had read.

There is no constitutional infirmity here.

## III

Finally, defendants contend that the Court erred in allowing impeachment use of each defendant's out-of-court statement without a finding that the statements were made voluntarily. They say that there is "some question as to the voluntariness of defendant Morgan's statement which was not resolved by the Court." We agree.

The Trial Court, after an extensive *voir dire* examination,[3] concluded that Morgan had been advised of his *Miranda* rights.[4] The statements were used by the State, not in its case in chief but to impeach Morgan's testimony when he took the stand in his own behalf. In this situation the test to be applied in determining whether use of the statement is proper is not whether the terms of *Miranda* have been met but, rather, whether the statement is otherwise "trustworthy". Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971).

Although *dictum* in *Harris* may indicate that under certain circumstances involuntary statements may be used for impeachment purposes, it is clear that the defendant in *Harris* made no claim that the statements to the police were coerced or involuntary. And while the Supreme Court there may have suggested that trustworthiness and voluntariness are not coextensive, voluntariness is, at least, an important element to be considered in determining the trustworthiness of a defendant's out-of-court statement.

After an examination of the record we are unable to find any express ruling by the Trial Court as to the voluntariness of the statement of either defendant prior to use thereof before the jury. See Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L. Ed.2d 618 (1972); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Defendants are entitled to such a ruling even more where the statements are to be used only for impeachment purposes. Accordingly, we remand with instructions to make a determination of trustworthiness, which includes voluntariness of defendants' statements. Compare State v. Winsett, Del.

Super., 230 A.2d 777 (1967), and 238 A.2d 821 (1968); and see Sigler v. Parker, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970), and Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

Jurisdiction is reserved.

---

3. The examination is spread over some thirty pages of transcript during which the police officer and Morgan testified (the latter out of the presence of the jury).

4. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that one in custody who is interrogated by officers about matters that may tend to incriminate him is entitled to be warned that he has the right to remain silent, that anything he says may be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be provided for him, [if he so desires], prior to any questioning.