650 F.2d 477
 DAVIS, Maurice L., Appellant,
v.
STAMLER, John, Individually and in his official capacity as
prosecutor for the County of Union, State of New
Jersey, The Supreme Court of New Jersey,
and V. William Dibuono.
 No. 80-2329.
 United States Court of Appeals,
Third Circuit.
 Argued March 19, 1981.
Decided April 14, 1981.
Rehearing Denied May 7, 1981.
 
 Robert T. Pickett (argued), East Orange, N. J., for appellant.
 George Perselay, Brian W. Fahey (argued), County of Union Dept. of Law, Elizabeth, N. J., for appellee Stamler.
 Before SEITZ, Chief Judge, VAN DUSEN and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Plaintiff Maurice Davis brought an action in the district court under 42 U.S.C. § 1983 (1976) alleging that the disqualification of his attorney in a state criminal proceeding deprived him of his constitutional right to counsel of his choice. Davis appeals from a final order of the district court denying all relief.
 
 I.
 
 2
 Davis was indicted by a New Jersey grand jury for allegedly converting corporate assets and obtaining money and other property by false pretenses while he was president of Industry Community Center (ICC). Davis retained Robert Pickett to represent him in the criminal proceeding. Pickett, however, had previously represented ICC in various civil matters, and he had served as acting president of the corporation for two months after Davis resigned. As a result, the state moved to disqualify Pickett. The state argued that Pickett's representation of Davis would violate DR 5-102 of the Code of Professional Responsibility because Pickett "may" be called as a witness. The state also contended that DR 5-105(A) required disqualification because Pickett would be placed in the position of representing differing interests and, therefore, the exercise of his independent professional judgment would be adversely affected. Pickett emphasized that he did not represent ICC when the alleged criminal acts occurred, and that he had been acting president only for the limited purpose of calling meetings and keeping the minutes until a new president could be named. Pickett maintained that during his association with ICC he did not participate in any discussions concerning Davis' alleged improprieties.
 
 
 3
 The state trial judge, after a hearing, disqualified Pickett. The judge found that a conflict of interest existed and that DR 5-102 and DR 5-105 required disqualification. The judge emphasized that Davis' alleged criminal activities were "adverse" to the interests of the corporation that Pickett served as counsel and president. The judge also noted that Pickett had access to ICC's books and records, and that he "was in a position" to advise the corporation as to any wrongdoing by its officers. The Appellate Division of the Superior Court of New Jersey, citing DR 5-102, affirmed "solely because of the probability that counsel may be subpoenaed to testify." The New Jersey Supreme Court denied Davis' petition for certification.
 
 
 4
 Davis then initiated a section 1983 action against the county prosecutor, the state trial judge, and the New Jersey Supreme Court, alleging a deprivation of his constitutional right to counsel of his choice and requesting injunctive and declaratory relief. After a nonevidentiary hearing, the district court concluded that DR 5-102 did not require disqualification because it believed that an allegation that an attorney is a "potential witness" is not sufficient under that rule. Nevertheless, the court held that Pickett must be disqualified because a conflict of interest existed. The court emphasized that Pickett "might have obtained information substantially related to the present representation" during his prior representation of ICC. Therefore, Pickett was "in a position to breach confidences owed to ICC." The district court also found that representation of Davis by Pickett would result in the appearance of impropriety. It did not directly address the constitutional issue.
 
 II.
 
 5
 In reaching its decision that Pickett was disqualified from representing Davis in the state criminal proceeding, the district court essentially analyzed the issues as if a disqualification motion had been made in a proceeding originating in federal court. The court noted that the local rules of the United States District Court for the District of New Jersey adopted the American Bar Association Disciplinary Rules, and it examined cases setting out standards for attorney disqualification in federal court. We believe, however, that in a section 1983 action alleging that the disqualification of a state criminal defendant's attorney deprived the defendant of his constitutional right to retain counsel of his choice, a federal court must focus on whether the disqualification infringed a constitutional right, not whether it otherwise would have made the same decision as the state court.
 
 
 6
 Davis alleged in his complaint that the defendants deprived him of his constitutional rights under the fifth, sixth, and fourteenth amendments by preventing him from retaining counsel of his choice. Although the sixth amendment guarantees criminal defendants an absolute right to the assistance of counsel, it does not guarantee them an absolute right to counsel of their choice. See, e. g., United States v. Ostrer, 597 F.2d 337 (2d Cir. 1979); United States v. Dolan, 570 F.2d 1177 (3d Cir. 1978). The sixth amendment does provide some protection for a criminal defendant's decision to select a particular attorney. The defendant must have a "fair opportunity" to secure counsel of his choice, see Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932), and "arbitrary dismissal" of the attorney chosen by the defendant is prohibited, see United States v. Laura, 607 F.2d 52, 56 (3d Cir. 1979). It is clear, however, that the sixth amendment protection accorded to the defendant's choice of counsel must be balanced against the requirements of the fair and proper administration of justice, including the interests underlying the ethical standards governing the practice of law. See Ostrer, 597 F.2d 337; Dolan, 570 F.2d 1177.
 
 
 7
 The right to counsel of one's choice also derives from the due process clause. See United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3d Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). Like the sixth amendment, the protection afforded by the due process clause is not absolute. This court, faced with the question of whether a criminal defendant had been given sufficient time to retain counsel of his choice, stated in Carey that "(t)he constitutional mandate is satisfied so long as the accused is afforded a fair or reasonable opportunity to obtain particular counsel, and so long as there is no arbitrary action prohibiting the effective use of such counsel." Id. at 1215.
 
 
 8
 We believe that the arbitrary action standard articulated in Carey should also govern section 1983 actions such as the one brought by Davis. Disqualification of attorneys in state court proceedings is essentially a state matter and should not be subject to federal court regulation except in egregious cases. The arbitrary action standard provides protection for a state criminal defendant's choice of counsel while affording deference to the state's legitimate interests in regulating the professional conduct of attorneys appearing in its courts and in ensuring the proper administration of justice. We stress that in a section 1983 action alleging that disqualification of a state criminal defendant's attorney deprived the defendant of his constitutional right to counsel of his choice, the district court's scope of review is narrow because it is examining the state court decision only to determine if that court acted arbitrarily.
 
 
 9
 In this case, the state trial judge held a hearing on the disqualification issue and made specific findings to support his decision. Cf. Laura, 607 F.2d 52 (district court made no findings as to conflict of interest before disqualifying one of defendant's attorneys). Given the facts of this case, the district court would not have been justified in finding that the state trial judge's decision to disqualify Pickett was arbitrary. Pickett was counsel for ICC when state and federal authorities were investigating Davis, and he furnished corporate documents to state investigators at their request. Furthermore, Pickett accepted Davis' oral resignation as president and served as acting president for a two-month period. During his tenure as acting president, Pickett presided over meetings of the Board of Trustees in which the financial problems of ICC were discussed. Although Pickett denies receiving any information about Davis' alleged criminal activities during his association with ICC, it was not unreasonable for the state trial judge to find that Pickett might have obtained information related to the criminal proceeding.[1] In addition, the state trial judge's conclusion that Pickett would be forced to serve conflicting interests if he represented Davis was not arbitrary. The facts present a number of potential conflicts of interest, and we cannot say that the state trial judge acted arbitrarily when he found that DR 5-105 required Pickett's disqualification.
 
 
 10
 Moreover, we cannot say that the state courts arbitrarily deprived Davis of the counsel of his choice by holding that DR 5-102 required disqualification. When the disqualification issue was before the state courts, the prosecution contended that Pickett "may" be a witness at Davis' trial. The state courts concluded that this contention was sufficient to require disqualification under DR 5-102. Nevertheless, the district court held that DR 5-102 required more than an allegation that an attorney "may" be a witness. We believe, however, that the interpretation of a state disciplinary rule is a question for the state courts. The decision by the New Jersey courts that DR 5-102 required disqualification in this case was not arbitrary. Given Pickett's representation of ICC, his acceptance of Davis' resignation, and his tenure as acting president of the corporation, the prosecution's statement that Pickett might be called as a witness was not without foundation. Serious ethical concerns arise whenever an attorney for one of the parties becomes a witness in the proceeding, and these concerns are certainly heightened in a situation such as this case where the former counsel and acting president of the corporate victim seeks to represent the criminal defendant. Therefore, we conclude that the defendants did not arbitrarily deprive Davis of his right to retain counsel of his choice.
 
 III.
 
 11
 The order of the district court will be affirmed.
 
 
 
 [1]
 An affidavit submitted in the district court stated that matters relating to the charges against Davis were discussed at a board meeting attended by Pickett in his capacity as corporate counsel and acting president of ICC