UNITED STATES of America

v.

Robert FLANAGAN, James Keweshan, Sidney Landis and Thomas McNamee, Appellants.

No. 81–3116.

United States Court of Appeals, Third Circuit.

Argued May 11, 1982.

Decided June 2, 1982.

Richard A. Sprague, Edward H. Rubenstone, Bruce L. Thall (argued), Sprague &

Rubenstone, Philadelphia, Pa., for appellants.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Luther E. Weaver, III, Peter F. Schenck (argued), Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Alan Ellis, Philadelphia, Pa., Eugene G. Iredale, John J. Cleary, Federal Defenders of San Diego, Inc., San Diego, Cal., for amici curiae National Association of Criminal Defense Lawyers and National Legal Aid and Defender Assn.

Before GIBBONS and HUNTER, Circuit Judges and THOMPSON,[*] District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This appeal presents questions concerning the power of a district court to disqualify joint counsel for criminal defendants under a recently enacted section of Rule 44, Federal Rules of Criminal Procedure. After finding that a conflict of interest was very likely to arise, that each defendant was aware of the potential conflicts, and that each defendant had voluntarily and intelligently chosen to waive any claim of conflict of interest, the district court, 527 F.Supp. 902, ruled that it need not accept the defendants' waiver and proceeded to disqualify the defendants' chosen counsel from the case entirely. We affirm.

## I.

The defendants, Robert Flanagan, James Keweshan, Sidney Landis and Thomas McNamee, are all police officers employed by the Philadelphia Police Department as members of a so-called "grandpop" squad that serves to decoy and apprehend street criminals. They each have been charged in

a single indictment with conspiracy to violate the civil rights of citizens, 18 U.S.C. § 241, and also have been charged in various other counts of the same indictment with substantive violations of those rights. 18 U.S.C. §§ 2, 242. The government charges that the defendants conspired to arrest persons, under color of law, without probable cause, and that various groups of the defendants falsely arrested and physically abused eight persons in violation of their civil rights.

The defendants chose to present a common defense, and all retained the law firm of Sprague & Rubenstone (the firm) to represent them. Pursuant to a government request and in accordance with Fed.R. Crim.P. 44(c), the district court conducted a hearing to determine whether defendants were aware of the risks of joint representation and of their rights to separate representation. The court found that each defendant had already been apprised by an attorney from the firm of a number of potential risks associated with joint representation. The court then questioned each defendant, under oath, to ascertain whether he understood those risks, and whether financial considerations had played a role in the choice of counsel.

The court found that each defendant was completely aware of the potential conflicts of joint representation and that each defendant had voluntarily and intelligently chosen to waive any claim of conflict of interest in electing to be represented by one counsel. But because the court also found that a conflict of interest was very likely to arise in the course of the proceedings, it held that the waivers need not be accepted, and ordered that the firm should be disqualified from representing any of the defendants. Defendants appealed[1] and the dis-

---

[*] Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1. We have jurisdiction to hear appeals from district court orders disqualifying counsel under 28 U.S.C. § 1291 inasmuch as such orders are "collateral orders" within the meaning of *Cohen v. Beneficial Industrial Loan Corp.*, 337

U.S. 541 (1949). *E.g., United States v. Miller*, 624 F.2d 1198, 1199 (3d Cir. 1980); *IBM v. Levin*, 579 F.2d 271, 277–78 (3d Cir. 1978). Those holdings are not affected by *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 372 n.8, 101 S.Ct. 669, 672 n.8, 66 L.Ed.2d 571 (1981).

trict court has granted a stay of its proceedings pending disposition of the appeal.

## II.

A new section of Rule 44, Federal Rules of Criminal Procedure, concerning Right to and Assignment of Counsel, became effective on December 1, 1980:

> *Joint representation.* Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c). The district court's disqualification order was made pursuant to the final sentence of this rule. Thus in order to reverse we would have to find either that there is good cause to believe that no conflict of interest is likely to arise, or that the measures taken were an abuse of discretion.

## A.

Although the defendants do not dispute the existence of potential conflicts of interest in joint representation by the firm, it is nevertheless important to review the nature of these potential conflicts in order to determine whether the court's action was appropriate under the circumstances.

Each defendant is not charged in every count of the indictment. Two are charged in all counts, while in five of thirteen counts only three are charged. This varying amount of involvement was a basis for defendants' motion to dismiss the first count (conspiracy) of the indictment. Defendants Landis, McNamee and Keweshan also moved for severance, contending that their role was only to respond to a signal from Flanagan (the decoy) and that prejudice would arise if they were forced to stand trial with him. Lastly, as the district court points out and as the defendants have recognized, oral statements made by the defendants in the course of their decoy employment are essential to prove the requisite state of mind of each defendant. Defense counsel would ordinarily want to cross-examine any hearsay witness as to a specific defendant. Yet a joint counsel, privy to confidences of another defendant that might at the same time tend to implicate the latter while absolving the former, would find himself in an awkward situation.

All these factors indicate conflicts that joint defense counsel will very likely face in presenting an adequate defense for each defendant. Some, such as inability to argue the innocence or lesser culpability of one defendant based upon the guilt or greater culpability of the other, are inherent in the situation. Some may arise due to future events. For example, the government may offer immunity to one defendant in return for testimony against the others. In one sense these problems may not yet have arisen and thus the conflicts of interest may be deemed merely potential. Indeed, it is conceivable that it will never be in one of the defendants' interest to adopt a strategy that would have adverse consequences for another defendant. A common defense throughout the proceedings might truly offer each the best opportunity for acquittal. On the other hand, the present likelihood of a future actual conflict of interest, which could result in the inadequate representation of some defendants, must be considered

by defendants' counsel[2] and by the court,[3] and brought to the defendants' attention.

**B.**

In this instance, both the joint counsel and the district court carefully brought various likely conflicts to the attention of the defendants. The court found that the defendants have voluntarily and intelligently waived any claim of conflict of interest and have elected to be represented by the firm.[4] The defendants now contend that this waiver entitles them to such joint representation and that the district court may not interfere with their choice.

 The sixth amendment guarantee of effective assistance of counsel does not provide defendants with an absolute right to the lawyer of their choice. *Davis v. Stamler*, 650 F.2d 477 (3d Cir. 1981); *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978). Although the sixth amendment and the due process clause of the fifth amendment do afford some protection for a defendant's decision to select a particular attorney, that protection goes no further than preventing arbitrary dismissal of the chosen attorney, and providing a fair opportunity to secure counsel of his choice. *Davis v. Stamler, supra.* Defendants urge, nevertheless, that the district court must accept their valid waiver of conflict-free representation, at least in instances where the conflicts are merely potential and not present.

Much of the legal precedent dealing with the right to conflict-free representation and with the waiver of that right has been announced in cases reviewing prior convictions. In *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), for example, this court recognized that the right to assistance of counsel unimpaired by conflicts arising from joint representation, may be waived, but held the prior trial to have been constitutionally defective where the record was silent as to any such waiver. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court reversed this court's holding with respect to one aspect of such post-conviction challenges. The Court held that in order to establish a sixth amendment violation, a defendant who raised no objection at trial must demonstrate that an actual—not merely potential—conflict of interest adversely affected his lawyer's performance. 446 U.S. at 348, 100 S.Ct. at 1718. In the course of its discussion, when commenting that multiple representation may be valuable in presenting a common defense against a common attack, the Court acknowledged that waiver of potential conflicts is possible. *Id.* *See also Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426, 482–83 (1978); *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed.2d 680 (1942) (Frankfurter, J., dissenting). After *Cuyler v. Sullivan*, this court refused to set aside a conviction and to allow withdrawal of a guilty plea when the defendant had knowingly and intelligently waived her right to separate counsel. *United States v. Laura*, 667 F.2d 365, 371–73 (3d Cir. 1981).

It does not follow, however, that because defendants may waive the right to separate representation free from potential conflicts,

---

**2.** *See ABA Standards Relating to the Prosecution Function and the Defense Function* § 3.5(b) (1971) at 211:

> The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

*See also Code of Professional Responsibility*, DR 5–105 (Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer).

**3.** *See* Fed.R.Crim.P. 44(c), supra.

**4.** The government suggests that under the circumstances of this case, defendants could not have made knowing and intelligent waivers of their rights to conflict-free representation. *See United States v. Quinones*, 613 F.2d 47 (3d Cir.), *cert. denied*, 446 U.S. 937 (1980); *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978); *United States v. Helton*, 471 F.Supp. 397 (S.D. N.Y.1979). It also suggests that the waivers by defendants were merely conditional. U.S. Brief at 18–23. We see no reason, however, to doubt the district court's characterization of the waivers. In view of our disposition of this case, in any event, there is no reason to question that characterization.

they have an absolute right, constitutional or otherwise, to have such waivers accepted by a court. A truly knowing and intelligent waiver accepted by the court will insulate a conviction from later attack. But the perspective of a trial court judge need not be limited to a concern not to have a conviction overturned.[5]

In *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978), this court held that a trial court need not accede to a waiver of conflict of interest when faced with an actual serious conflict of interest on the part of an attorney representing two co-defendants. In addition to the trial judge's interest in being free from post-conviction attacks, we mentioned the court's concerns about breaches of professional ethics and about respect for the integrity of the court. *Id.* at 1184.

In *Dolan*, we stressed that the trial court was faced with "an actual serious conflict of interest, rather than a mere possibility, ..." *Id.* That, however, should not be taken to mean that the trial court must accede to a waiver when the conflict is anything short of actual. In this case the trial court found, and the defendants do not dispute, that a conflict of interest is very likely to arise. The trial court expressed its concern for the professional ethical standards to which defense counsel should be held, and questioned whether in this case the firm was even in a position to advise the defendants fully of the possible conflicts in view of the stated ignorance of government strategy regarding individual defendants. Finally, the trial court expressed its concern that the likely conflicts might well develop into actual conflicts before the trial came to a close, conceivably resulting in defendants' motions for a mistrial.

 A defendant's choice of counsel is not to be dealt with lightly or arbitrarily. That choice should not be interfered with in cases where potential conflicts of interest are highly speculative. Where, however, the materialization of actual conflict is very likely, disqualification of defense counsel and ordering defendants to retain separate counsel are appropriate measures to be taken pursuant to Fed.R.Crim.P. 44(c). Once each defendant has consulted with his own counsel, a truly independent decision may then be made whether or not to continue with a common defense strategy in light of the hazards that such a strategy may entail.[6]

Appellants contend that even if joint representation were inappropriate, the firm should not have been disqualified from representing any of the defendants. The potential for conflict arising from the firm's receipt of confidential information from all the defendants, and its obligations in defending just one of the defendants, perhaps at the expense of the others, is obvious. While complete disqualification may not be required in every case where a potential conflict of interest is likely to arise, it is one of the measures committed to the district court's discretion by Rule 44(c). There was no abuse of discretion in this instance.

### III.

The order of the district court disqualifying the firm of Sprague & Rubenstone from representing any of the four defendants and requiring that each defendant be separately represented will be affirmed.

---

**5.** *See generally* Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, 62 Minn.L.Rev. 119 (1978). To the extent that the decisions of two other circuit courts require district court acceptance of waivers in cases of potential or actual conflicts of interest, we respectfully disagree. *See United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975); *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). The independent constitutional right to represent oneself in a criminal trial recognized in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), does not imply a constitutional right to waive conflict-free representation by counsel. A defendant's decision to proceed with joint counsel in the face of possible conflicts implicates more considerations and affects more people than does a decision to proceed *pro se*. *See Geer, supra*, at 158–59.

**6.** *See, e.g., In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381 (S.D.N.Y.1975) (attorney-client privilege will not apply among joint defendants and their attorneys in later controversies between or among those clients, even though shared information may initially be insulated from exposure beyond confines of group).