**UNITED STATES of America, Plaintiff,**

v.

**Arthur James COOPER, Sr., Gwynneth Regeina Cooper and Timothy James Cooper, Defendants.**

**Crim. No. 87–73–JRR.**

United States District Court,
D. Delaware.

Oct. 29, 1987.

Charlene D. Davis, Asst. U.S. Atty., U.S. Dept. of Justice, Wilmington, Del., for plaintiff.

Stephen B. Potter, Potter, Carmine & Hodas, Wilmington, Del., for defendants.

## OPINION

ROTH, District Judge.

Defendants Arthur, Gwynneth and Timothy Cooper, a father, mother and son, are charged with wire fraud and conspiracy, arising from the submission of allegedly false statements concerning work performed by Timothy Cooper. The Coopers have jointly retained Stephen B. Potter, a Delaware attorney, to represent them in this action. Upon the request of the government, the case is now before the Court for consideration of the propriety of the joint representation under Federal Rule of Criminal Procedure 44(c).

Whenever two or more defendants are jointly charged and are represented by the same counsel or by counsel who are associated with the same law firm, a question arises whether the interests of the defendants conflict so that joint representation would be ineffective. Rule 44(c) mandates:

> [T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe that no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c). This rule is designed to protect a criminal defendant's sixth amendment right to effective counsel.[1]
Fed.R.Crim.P. 44(c) note 1.

### FACTS

Arthur Cooper, Sr. (Mr. Cooper), the father, is a member of the International Longshoreman's Association, AFL–CIO, Local 1242–1, and is employed as a timekeeper by Southern Stevedoring Company, Inc. (Southern) at the Port of Wilmington. As timekeeper, Mr. Cooper has responsibility for recording and submitting the daily work hours of all longshoremen employed by Southern. Arthur Cooper, together with his wife Gwynneth, a school teacher, and son Timothy, allegedly schemed to defraud Southern by submitting timesheets and obtaining pay from Southern for Timothy for work that Timothy never performed. Timothy was a high school stu-

---

1. The sixth amendment provides:
   [i]n all criminal prosecutions, the accused shall enjoy the right ... to the Assistance of counsel for his defense.
   *U.S. Const.* amend VI. The sixth amendment has been interpreted to guaranty criminal defendants the right to "effective" counsel. To satisfy the constitutional standard of effective-

ness, counsel must be both loyal and competent. *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970); *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 131 (3d. Cir.1984). At issue here is whether the loyalty requirement of effective counsel will be met.

dent during the time he is alleged to have worked for Southern.

Mr. and Mrs. Cooper have been indicted on thirty-nine counts of wire fraud in violation of Title 18, United States Code §§ 1343 and 2. Timothy Cooper has been indicted on eight counts of wire fraud. All three defendants have been indicted on one count of conspiracy to defraud the United States in violation of Title 18, United States Code § 371.

This Court held a hearing for consideration of the propriety of joint representation of the defendants. At the hearing, each of the defendants individually responded to an examination by the Court and by Mr. Potter as to their consent to and understanding of the implications of the joint representation. Each defendant consented to Mr. Potter's joint representation.

Subsequent to the hearing, Mr. Cooper was indicted on September 22, 1987, for obstruction of justice for allegedly attempting to pay potential witnesses for favorable testimony in violation of 18 U.S.C. § 1503. (*United States v. Arthur Cooper*, Cr. No. 87–89). A motion to consolidate this case with the fraud case has been filed but will not be considered here.

## ANALYSIS

According to Rule 44(c) of the Federal Rules of Criminal Procedure, where defendants are jointly represented, the Court must act to protect defendants' right to effective counsel unless there is "good cause to believe no conflict of interest *is likely to arise....*" (emphasis added). The Court is required to advise each defendant of his or her right to effective counsel and of the right to separate counsel.

The .propriety of joint representation is most frequently addressed in the case law in the context of post-conviction claims of ineffective counsel. In a post-conviction challenge, the issue before an appellate court is whether a court may presume that a defendant was prejudiced at trial by joint representation. Last term, the Supreme Court provided the following standards for reviewing the effectiveness of joint representation:

> [I]t is settled that "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). We have never held that the possibility of prejudice that "inheres in almost every instance of multiple representation" justifies the adoption of an unflexible rule that would presume prejudice in all such cases. See *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Instead, we presume prejudice "only if the defendant demonstrates that counsel '*actively represented conflicting interests*' and that 'an *actual* conflict of interest *adversely affected* his lawyer's performance.'" *Strickland*, 466 U.S. [668] at 692, 104 S.Ct. [2052] at 2067 [80 L.Ed.2d 674] (citation omitted). See also *Cuyler*, 446 U.S. at 348, 350 [100 S.Ct. at 1708, 1719].

*Burger v. Kemp*, — U.S. —, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987) (emphasis added); *see also*, *United States v. Gambino*, 788 F.2d 938, 951 (3d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *United States v. Laura*, 667 F.2d 365, 370–71 (3d Cir.1981); *Isijola v. State*, 340 A.2d 844, 845–46 (Del.1975); *Hill v. State*, 316 A.2d 557, 558 (Del.1974). Thus, a showing that a *potential* conflict of interest existed in a joint representation will not raise a presumption of prejudice in a post-conviction challenge.[2]

Both Rule 44(c) and case law, involving post-conviction challenges, address the right to effective counsel but provide different standards. The standard for raising a presumption of prejudice in a post-convic-

---

**2.** In *Cuyler v. Sullivan, supra,* 446 U.S. at 350, 100 S.Ct. at 1719, the Supreme Court overturned a decision of the Third Circuit Court of Appeals which held in a post-conviction challenge that joint representation resulted in denial of effective counsel whenever there existed *possibility* of prejudice, however remote. 593 F.2d 512, 520 (3d Cir.1979).

tion challenge is stringent: an appellate court must find actual conflict with adverse effect. In contrast, under Rule 44(c) a trial court must anticipate potential conflicts and take appropriate measures to protect the right to effective counsel when a conflict "is likely to arise."

■ In the present case, conflicts are likely to arise because codefendants here are not each charged on all counts of the indictment. Moreover, Mr. Cooper has been charged in a second indictment with obstruction of justice. As a result, the relative culpability of each codefendant may become a pivotal aspect of his or her defense. A single attorney cannot raise arguments as to the lesser culpability of a defendant without compromising the defense of the others. One of the defendants may have made or may make statements to counsel which support his or her defense while weakening the defense of another codefendant. In such an event, joint counsel for codefendants may be placed in the unethical position of having to "cross-examine" one of his clients to support the defense of another client. In addition, if defendants have varying levels of culpability, a single attorney may not provide an effective statement at closing or sentencing.

We also foresee that Arthur Cooper's position as the timekeeper, who submitted the allegedly false work reports, places him in a dominant position in this scheme which may, if all three are represented by the same attorney, complicate efforts of the other two defendants to exculpate themselves. Additional conflicts may also arise from questions of degrees of knowledge by each defendant as to the source of any benefits received as a result of the scheme.

Because conflicts may arise, the Court must take "appropriate measures" under Rule 44(c) to protect each codefendant's right to effective counsel. While Rule 44(c)

does not describe what measures may be appropriate, "[o]ne possible course of action is for a court to obtain a knowing, intelligent and voluntary waiver of the right to separate representation...." Fed. R.Crim.P. 44(c) 1980 Advisory Committee Note. The Court may also "order that the defendants be separately represented in subsequent proceedings in the case." *Id.* The 1980 Advisory Committee indicated that the most likely course of action that will be appropriate is to require separate counsel; the Advisory Committee stated that "except in extraordinary circumstances ...," codefendants should be required to retain separate counsel. *Id.* (quoting *United States v. Mari,* 526 F.2d 117, 121 (2d Cir.1975) (concurring opinion), *cert. denied* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976) (concurring opinion). Requiring separate counsel allows each defendant an independent, loyal and zealous advocate and serves the administration of justice, the appearance of justice and the cost of justice.[3]

■ This Court is not satisfied that the present case presents an "extraordinary circumstance" justifying joint representation, even though each defendant has given consent. While it is true that "a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interest," *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978), a trial court must find that the waiver is made "knowingly, intelligently, and with the awareness of the likely consequences of the waiver." *United States v. Dolan,* 570 F.2d 1177, 1181 (3d Cir.1978). In determining whether a waiver is valid, a trial court must be cognizant that "a defendant may be competent to stand trial, but not competent enough to understand the complex, subtle, and some-

---

**3.** The Advisory Committee stated:

> [H]abeas corpus petitions, petitions for new trials, appeals and occasionally retrials ... can be avoided. Issues as to whether there is an actual conflict of interest, whether the conflict has resulted in prejudice, whether there has been a waiver, whether the waiver is

intelligent and knowledgeable, for example, can all be avoided. Where a conflict that first did not appear subsequently arises in or before trial, ... continuances or mistrials can be saved.

*Id.* (quoting *United States v. Mari, supra* at 121 (concurring opinion)).

times unforseeable dangers inherent in multiple representation." *Id.*

At the hearing, each defendant expressed his or her desire to have Mr. Potter provide joint representation despite potential conflicts that existed or that could arise. Yet several factors suggest each defendant's waiver may not be knowing and voluntary. Because defendants are family members, they may not be acting out of self-interest in choosing joint representation, but rather out of an interest to protect the family as a unit. However, each defendant is individually entitled to effective counsel and protection of this right is paramount to a family's desire to defend themselves as a unit. The Court is particularly concerned that Timothy Cooper, a minor during part of the period alleged in the indictment and now age 20 and a college student, may be acquiescing to the wishes of his parents to proceed with joint representation. Furthermore, we are sensitive to the fact that financial considerations may have affected the codefendants' decision to retain a single attorney.[4] Joint representation may result in lesser attorneys' fees for the Coopers, and this consideration may have undermined the voluntariness of each defendant's waiver of the right to separate counsel.[5]

Even assuming that each of the codefendants made a knowing and voluntary waiver, this Court is not required to accept the waiver, if it believes that conflict is likely to arise. *United States v. Flanagan,* 679 F.2d 1072, 1075–76 (3d Cir.1982), *rev'd on jurisdictional grounds* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288; *See United States v. Dolan, supra* at 1184 (3d

Cir.1978). The Third Circuit in *Flanagan* held that a trial judge may refuse to accept a valid waiver and order separate counsel based on overriding concerns for protecting the right to effective counsel and for upholding professional ethical standards. *Id.* at 1076.[6]

Defendants' preference for a joint representation by an attorney of their choice will not be lightly set aside. However, "although the right to counsel is absolute, there is no right to a particular counsel." *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). The Third Circuit has held that "[a]lthough the sixth amendment and the due process clause of the fifth amendment do afford some protection for a defendant's decision to select a particular attorney, that protection goes no further than preventing arbitrary dismissal of the chosen counsel, and providing a fair opportunity to secure counsel of his choice." *Flanagan, supra* at 1075 (3d Cir.1982) (citing *Davis v. Stamler,* 650 F.2d 477 (3d Cir.1981)).

We further find that ordering separate counsel for the defendants is consistent with standards of professional conduct in Delaware. Attorney conduct in Delaware is governed by the *Delaware Lawyers' Rules of Professional Conduct* (the Rules)[7] which are based on the Model Rules of Professional Conduct adopted by the American Bar Association in 1983. With regard to simultaneous representation of codefendants, the relevant rule is Rule 1.7(b):

(b) A lawyer shall not represent a client if representation of that client may

**4.** In a memorandum of law supplied to the Court by the Coopers' attorney, counsel stated that to require separate counsel in a "family situation" would create a "potentially devastating economic situation."

**5.** If any of the defendants cannot afford separate counsel, an application for court-appointed counsel may be made.

**6.** In the Second and Fifth Circuits, a trial court is required to accept a valid waiver. *See, United States v. Armedo–Sarmiento,* 524 F.2d 591 (2d

Cir.1975); *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975). This approach was noted and expressly rejected by the Third Circuit in *Flanagan, supra* at 1076, n. 5.

**7.** The Rules were adopted in Delaware in 1985 and replace the *Delaware Code of Professional Responsibility* (the "Code"). The requirement of attorney loyalty in the Code is found in Canon 5: "[a] lawyer should exercise independent professional judgment on behalf of a client."

be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be materially affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Rule 1.7 sanctions joint representation where each client consents, and the lawyer holds a reasonable belief that his representation will not be adversely affected. Joint representation often may be appropriate in civil cases where parties share a wholly common interest in the outcome of the litigation. For example, in *Read v. Delaware Camera Club,* No. 80C–JN–157, slip op. at 2 (Del.Super.Ct.1981), the court denied plaintiff's motion to disqualify joint counsel for the camera club, its officers and directors, and its executive committee, defendants in the action. The Court found that because the plaintiff sought recovery against the defendants for himself and not for the camera club, the individual defendants were not "taking a position with respect to each other which [was] hostile or inconsistent or in opposition." *Id.* The court held that "[o]ne attorney may represent various clients as long as those clients do not have positions which are hostile, adverse or in conflict with the other clients whom he represents." *Id.,* citing 7A C.J.S. *Attorney and Client* § 152.

In criminal cases, however, joint or multiple representation is less likely to be appro-priate under the Rules. The Comment to Rule 1.7 provides that "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant." As noted earlier, at the heart of the conflicts that may arise in the present case is the fact that defendants are family members who may have varying levels of culpability in the alleged scheme to defraud and in the conspiracy. As attorney for each defendant, Mr. Potter has an obligation of loyalty and of "zealously assert[ing each defendant's] position under the rules of the adversary system." *Delaware Lawyers' Rules of Professional Conduct,* Preamble. If defendants have played different roles in the alleged fraud and conspiracy, Mr. Potter cannot zealously assert the lesser culpability of one particular defendant while remaining loyal to the others.

At this stage of the proceeding, it is not absolutely certain that conflicts will arise. The Comment to Rule 1.7 states, "[a] possible conflict does not itself preclude the representation." [8] The Comment adds, however, that an attorney must consider "the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." For the reasons stated above, the Court does find in this case that the probability of conflict is too great to permit joint representation.[9]

It is the determination of the Court, therefore, that Mr. Potter is disqualified as joint counsel to defendants and that de-

---

**8.** The Court notes at this juncture that a decision to disqualify Mr. Potter as the defendants' joint counsel in no way implies that he has acted unethically or illegally in undertaking the joint representation. An attorney's assessment of whether he can adequately carry out joint representation is discretionary, and as the introductory section to the *Rules* entitled "Scope" states, "Violation of a Rule should not ... create

any presumption that a legal duty has been breached."

**9.** Because no actual conflict has apparently arisen as yet between the defendants, Mr. Potter is not automatically precluded from continuing to represent one of the defendants, should one choose to retain him. *Pennwalt v. Plough,* 85 F.R.D. 264, 272 (D.Del.1979). If he does, however, in the future represent one of the Coopers,

fendants will have to retain separate counsel.[10]

---

his conduct will, of course, be governed by Rule 1.9.

**10.** Independent of its authority to disqualify an attorney under FRCP 44(c), this Court may also order disqualification on the basis of its power to supervise the ethical activities of the attorneys who practice before it. *See, Nemours Foundation v. Gilbane,* 632 F.Supp. 418, 421 (D.Del.1986).