592 A.2d 29

STATE OF NEW JERSEY, PLAINTIFF, v. JOSE CARREAGA, GERARDO PEDRAZA, PABLO BERNAL, FRANCISCO PEREZ, LOURDES MORENO PEREZ AND GUILLERMO PATINO, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided March 26, 1991.

*Thomas Chirichella* for plaintiff (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*George Taite* for defendants Jose Carreaga and Gerardo Pedraza (*Samuel DeLuca,* attorney).

*Solomon Lefkowitz* for defendant Pablo Bernal.

*Amy Diaz* for defendants Francisco Perez and Lourdes Moreno Perez (*William Perkins,* attorney).

WEFING, J.S.C.

May a trial court reject statements by defendants that they waive the right to have an individual attorney and proceed to disqualify counsel who have, to date, represented multiple defendants in this criminal matter? Although there is no reported authority in New Jersey which explicitly so holds, I have concluded that it may for the following reasons.

There are five defendants in this case: Jose Carreaga and Gerardo Pedraza, both of whom are represented by Samuel DeLuca, Pablo Bernal, represented by Solomon Lefkowitz, Francisco Perez and Lourdes Moreno Perez, both of whom are represented by William Perkins. A sixth defendant, Guillermo Patino, is a fugitive who remains at large.

Francisco and Lourdes Perez are each charged with conspiracy in the second degree, under *N.J.S.A.* 2C:5-2; possession of a controlled dangerous substance with intent to dispense or distribute, in the first degree under *N.J.S.A.* 2C:35-5; possession of a controlled dangerous substance with intent to dispense or distribute in the second degree under *N.J.S.A.* 2C:35-5; and two counts of possession of a controlled dangerous substance under *N.J.S.A.* 2C:35-10 in the third degree. Bernal is charged with one count of conspiracy in the second degree, one count of

possession of a controlled dangerous substance with intent to dispense or distribute the same and one count of possession of a controlled dangerous substance. Carreaga and Pedraza are each charged with one count of conspiracy in the second degree. The controlled dangerous substance with which defendants are alleged to have been involved is cocaine.

Perkins and DeLuca have each placed on the record that neither is aware of any conflict of interest in his respective firm representing these defendants in this case and that, of course, in accordance with his ethical responsibilities, each would immediately withdraw from such representation if conflicts were to develop.

*R.* 3:8–2 provides as follows:

> No attorney or law firm shall be permitted to enter an appearance for or represent more than one defendant in a multi-defendant indictment without securing, upon motion brought before the Assignment Judge or his designee upon notice to the prosecuting attorney, permission of the court.

> Such motion shall be made in the presence of the defendants sought to be represented as early as practicable in the proceedings so as to avoid delay of the trial. For good cause shown, the court may allow the motion to be brought at any time.

This rule, and the cases decided both prior and subsequent to its adoption in 1979, reflect our courts' continuing concern and sensitivity to the problems which inhere in the representation by one attorney of two or more defendants in the same criminal matter. This continuing concern springs from the recognition that "[t]here is no greater impairment of a defendant's constitutional right to counsel than that which can occur when his attorney is serving conflicting interests. The resulting representation may be more harmful than the absence of a lawyer." *State v. Bellucci,* 81 *N.J.* 531, 538, 410 *A.*2d 666 (1980).

> In representing more than one defendant, where divergent or conflicting positions may exist, an attorney's representation will probably not be as effective as it might have been if he had one client. *The inherent difficulty in representing more than one defendant in a criminal proceeding and in steering a course which will promote the interests of each, but which will not*

*be to the detriment of any one, exposes the infirmity of dual representation.* [*State v. Land,* 73 *N.J.* 24, 29–30, 372 *A.*2d 297 (1977); emphasis supplied]

## Courts have stressed the necessity

[w]henever an instance of dual representation appears ... at the earliest convenient time to determine whether or not all defendants thus represented have been fully informed of the potential hazards of such a course. If they have been fully informed and still elect to proceed in that fashion, their willingness to do so should be made a matter of record. [*State v. Green,* 129 *N.J.Super.* 157, 164, 322 *A.*2d 495 (App.Div.1974)]

The United States Supreme Court has commented on the practical difficulties which confront a trial court in its attempts to determine whether defendants have been so fully informed and yet chose to proceed nonetheless.

Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant, not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. [*Wheat v. United States,* 486 *U.S.* 153, 162, 108 *S.Ct.* 1692, 1698, 100 *L.Ed.*2d 140 (1988) (affirming a trial court's refusal to accept a defendant's waiver of the right to separate counsel)]

In accordance with *R.* 3:8–2, I questioned the four affected defendants at a "Green" hearing (so named in light of *State v. Green, supra*) on December 12, 1990 about their understanding of the charges against them, the consequences for them if they were to be convicted and their understanding of the problems involved in having one lawyer for more than one defendant in a case such as this and their desire to proceed in that fashion.

■■ Prior to analyzing the responses received from the defendants, the words of former Judge Lacey bear repeating:

The judge and counsel know the purpose of the inquiry: to forestall a convicted defendant from later successfully urging on appeal that he did not at trial have effective assistance of counsel. Put in other words, it is done to construct a predicate for claiming later that there has been a waiver of a constitutional right....

Respectfully it is submitted that the trial judge cannot conduct a meaningful inquiry. He does not know the case. He cannot know the facts or the inferences which may be fairly drawn from them. He is unaware of the quality of the witnesses and the trial strategy the government and the defendants will pursue. Nor can he inquire into the defense without violating the defendant's

fifth and sixth amendment rights; and this is so whether the interrogation is held in open court or *in camera*. He is restricted to imparting vaguely contoured, abstract advice on a doctrine as to which the lawyer then and there present has undoubtedly advised his clients. [*U.S. v. Garafola*, 428 *F.Supp.* 620, 623–24 (1977), aff'd *sub nom. U.S. v. Dolan*, 570 *F.*2d 1177 (3 Cir.1978)]

As to defendants Pedraza and Carreaga, I am satisfied from their demeanor at the hearing that neither had any understanding of the magnitude of the charges facing him. Pedraza testified first. It was clear that prior to the hearing, Pedraza was completely unaware of the risks he faced in the proceeding. He had never discussed with his attorney the possibility of being represented individually. While Pedraza stated his desire that DeLuca be his attorney, it is not so clear that he wished DeLuca to represent Carreaga as well. He demonstrated no understanding of the possibility that either he or his co-defendant might be able to negotiate a resolution of his own case and leave the other to stand trial.[1] Carreaga's testimony was equally infirm.

Francisco Perez and Lourdes Moreno Perez also both testified at the hearing. At the time period charged in the indictment, these individuals were not husband and wife; they married after their arrest. Their testimony did represent an understanding of the charges, of the right of each to a separate attorney and an apparent decision to forego that right.

The right to the undivided assistance of counsel is such a fundamental right that any waiver of that right must be contained in "an intelligent and competent expression." *State v. Land, supra* 73 *N.J.* at 34, 372 *A.*2d 297. Defendant must comprehend what it is he is giving up before he can be charged with the consequences of that decision. The transcript may

---

[1] The 'inherent difficulty' (of joint representation) referred to in *Land* is as present at the pretrial stage as it is when the joint representation occurs at trial. The pervasive practice of plea bargaining highlights the importance of the pretrial period in our criminal process. To effectively advise his client as to what plea should be entered, defense counsel must be free to explore all possibilities, including pretrial negotiations. *State v. Bellucci, supra* 81 *N.J.* at 540, 410 *A.*2d 666; citations omitted.

contain words which might sustain, on cold reading, a finding of waiver. The words alone, however, do not reveal the entire story. Having had the opportunity to see and observe Pedraza and Carreaga, I am satisfied that neither understands the risks which inhere in multiple representation.

> These defendants did not show a comprehension of the complex, subtle and unforeseeable dangers inherent in the ... multiple representation by their attorneys. Each stated they wanted to waive their right to effective assistance of counsel. But their attempted waivers were a mere rote recitation of a desire to waive the conflict, and did not show a real understanding of the issues involved, the nature of the rights attempted to be waived, or the significance of the attempted waivers. [*United States v. Agosto*, 528 *F.Supp.* 1300, 1309 (D.Minn.1981)]

Despite the somewhat firmer testimony of the Perezes, I have concluded that they also require individual counsel in this case. I have reached this conclusion for several reasons. The Perezes are, of course, husband and wife and their position is thus analogous to that of defendants in *U.S. v. Cooper*, 672 *F.Supp.* 155 (D.Del.1987), which concerned a prosecution against a husband, wife and son for fraud and conspiracy. The district court refused to accept defendants' waiver of the right to separate counsel and noted:

> Defendants are family members who may have varying levels of culpability in the alleged scheme to defraud and in the conspiracy. As attorney for each defendant, Mr. Potter has an obligation of loyalty and of zealously asserting each defendant's position.... If defendants have played different roles in the alleged fraud and conspiracy, Mr. Potter cannot zealously assert the lesser culpability of one particular defendant while remaining loyal to the others. [672 *F.Supp.* at 160]

There is an additional aspect to the issue of joint representation involved in this matter which was not of concern in the earlier reported New Jersey cases which have dealth with the question of joint representation. All defendants in this matter are charged with conspiracy and under *Evid.R.* 63(9), statements of any one defendant may, at the time of trial, be admissible against the other co-defendants. This rule provides in part that

> [a] statement which would be admissible if made by the declarant at the hearing is admissible against a party if ... at the time the statement was made

the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan. [*Ibid.*]

The scope of the rule is demonstrated by *State v. Phelps*, 96 *N.J.* 500, 476 *A.*2d 1199 (1984), which concluded that the existence of the conspiracy need only be demonstrated by a "fair preponderance" of the evidence to make such statements admissible (96 *N.J.* at 519, 476 *A.*2d 1199) and, further, that such statements can be used as evidence on other substantive issues in the trial even if defendant is acquitted of the conspiracy charge. 96 *N.J.* at 516, 476 *A.*2d 1199. Thus, a statement of defendant Bernal represented by Lefkowitz, which concerned defendant Carreaga, represented by DeLuca, and which was made to defendant Francisco Perez, represented by Perkins, would be equally admissible against defendant Pedraza, also represented by DeLuca and defendant Lourdes Perez, also represented by Perkins.

Representing two clients where the same evidence may affect them differently is impossible. *United States v. Flanagan*, 679 *F.*2d 1072 (3 Cir.1982), reversed on jurisdictional grounds 465 *U.S.* 259, 104 *S.Ct.* 1051, 79 *L.Ed.*2d 288 (1983) is instructive in this regard.[2] Writing for the court, Judge Gibbons noted that when there are

> oral statements made by the defendants in the course of ... [their activities which] are essential to prove the requisite state of mind of each defendant ... [d]efense counsel would ordinarily want to cross-examine any hearsay witness as to a specific defendant. Yet a joint counsel, privy to confidences of another defendant that might at the same time tend to implicate the latter while absolving the former, would find himself in an awkward situation. [679 *F.*2d at 1074]

In *Flanagan* Judge Gibbons concluded that although defendants may waive the right to have an individual attorney, defendants do not

---

[2]In *Flanagan,* the trial court refused to accept an apparent waiver of separate counsel, and was upheld at 679 *F.*2d 1072. Defendants' petition for *certiorari* was granted and the Supreme Court concluded that a pretrial order disqualifying defense counsel is not immediately appealable. The appeal was thus dismissed in 730 *F.*2d 945 (3 Cir.1984).

have an absolute right, constitutional or otherwise, to have such waivers accepted by a court. A truly knowing and intelligent waiver accepted by the court will insulate a conviction from a later attack. But the perspective of a trial court judge need not be limited to a concern not to have a conviction overturned. [Id. at 1076]

Judge Gibbons reached that conclusion despite the recognition that a "defendant's choice of counsel is not to be dealt with lightly or arbitrarily. That choice should not be interfered with in cases where potential conflicts of interest are highly speculative." *Ibid.*

This is a complicated multi-defendant matter which will require extensive and perhaps extraordinary pretrial preparation. A large part of the State's case, for instance, rests upon telephone communications which were intercepted pursuant to an authorized wiretap and recorded on 72 hours of tape recordings. These conversations, moreover, are in Spanish, not in English, and must be translated as well as transcribed. The other parties to this case should not have to face the risk of preparing such a complicated matter and having that work go to naught with a late-discovered conflict and a consequent adjournment.[3]

Although there is no reported New Jersey case which has refused to permit joint representation in the face of an attempted waiver of the right to independent counsel, I am satisfied that Judge Gibbons' reasoning is sound and should be followed here.

A trial remains essentially a search for truth and the trial judge's obligation is to do nothing which might obstruct that search and provide an unjust result. I have reached the conclusion that DeLuca may not represent Pedraza and Carreaga and Perkins may not represent the Perezes. They are disqualified

---

[3]It is noteworthy, moreover, the assurances by counsel that no conflict of interest existed between their joint clients were made without having reviewed these tapes. Query, whether there can be a knowing waiver when defendants are not aware of the evidence which exists against them.

from further involvement in this matter. Chirichella will please present a form of order.